STATE EX REL. J. C. DONNELLY, RELATOR, VS. HENRY R. TEASDALE ET AL., RESPONDENTS.

1. Two-thirds of a City Council may, under section 15, chapter 37, McClellan's Digest, expel the Mayor for disorderly behavior or malconduct in office.

2. The action of a City Council, under section 15, of chapter 37, Mc-Clellan's Digest, expelling an officer of the city, is not reviewable by appeal or writ of error, but only by mandamus; and in a proceeding by mandamus for such purpose the court will consider the whole proceeding of the council, including the testimony adduced before it, and if the testimony entirely fails to support the charges, will restore the officer.

This is a case of original jurisdiction upon mandamus proceedings instituted in the Supreme Court. The recitals of the alternative writ were as follows:

WHEREAS, It hath been made to appear to the Supreme Court of the State of Florida that the petitioner, James C. Donnelly, was, on the 23d day of June, A. D. 1885, the duly elected, qualified and acting Mayor of the city of Palatka, in the county of Putnam, and State of Florida, and was on that date holding, exercising and lawfully enjoying the said office, with its duties, privileges and emoluments, and that his said term had not then expired, and would not have expired before the ―― day of ――――, A. D. 1886;

That H. R. Teasdale, J. L. Purcell, A. W. Mann, M. Loeb and S. J. Kennerly are the Aldermen of said city, and act and perform the duties of the Councilmen thereof:

That there was presented to, and filed with said Aldermen, acting as the City Council of the city of Palatka, a petition or memorial, as follows:

"*To the Honorable, the Board of Aldermen of the City of Palatka, in the County of Putnam, State of Florida:*

"Respectfully represent the undersigned, who are citizens

of said city, that James C. Donnelly, the Mayor of said city, is hereby charged by us ·with disorderly behavior and malconduct in office : In this—that on the 8th day of May,. A. D. 1885, he, the said James C. Donnelly, Mayor as aforesaid, did appoint to the office of policeman one Albert Knight, who is known to be a disturber of the peace and good order of society : In this—that said appointment of said Knight was made while he, said Knight, was under arrest for a criminal offence, to.wit : ' Knowingly and willfully offering and doing violence to an officer in the lawful. execution of his legal duty :' In this—that said James C. Donnelly did endeavor to prevail upon B. F. Lassiter, on whose affidavit the warrant was issued for the arrest of said Knight for the perpetration of said crime, to withdraw said prosecution ; and we, the undersigned citizens of said city of Palatka, do further represent unto your honorable body that each and every of such acts and doings of the said James C. Donnelly is and are disorderly behavior and malconduct in office ; that such is an official outrage against the peaceable and law-abiding citizens of the city of Pa--latka, and tends to the utter destruction of the prosperity of said city. We, therefore, ask that your honorable body will take such action in the premises as is authorized by section 15, chapter 37, McClellan's Digest of the Laws of Florida."

   (Signed)                 " D. A. BOYD,"

              And other citizens, sixty-four in number.

   That petitioner was notified by the Council, through an officer of the city of Palatka, that these charges were against him, and had been filed with the Council, and that he should appear and answer same, and that on June 9th, A. D. 1885,. he appeared before said Council, by his counsel, and finding· no other charges against him than those contained in said. petition or memorial, and finding said charges contained in,

no other form, or by no other complaint, or information, or indictment, or warrant or affidavit or resolution, petitioner, by his counsel did then and there, before the Council aforesaid, sitting to hear the said question, move in writing to quash and dismiss the proceedings before the said Council for the following reasons, to wit: " 1st. Because no charge had been made in legal form against the Mayor, J. C. Donnelly; 2d. Because there was nothing before the Council of which they could take cognizance;"

That the said city Council then and there sitting to hear said question did then and there take vote upon the said motion, and did then and there resolve and vote that said motion to quash and dismiss should be refused, and the said motion was refused ;

That petitioner then demurred to the said charges so contained in said memorial, said demurrer being in due and legal form, and the grounds of said demurrer being stated as follows : 1st. That the said City Council had no jurisdiction to arraign and try this petitioner upon the said charges and specifications, as the same were presented in and by the said petition. 2d. That the matter as set forth in said petition did not constitute disorderly behavior in office. 3d. That the matters and things as set forth in said petition did not constitute malconduct in office. 4th. That the charges and specifications as set forth in said petition did not show that this petitioner had been guilty of any disorderly behavior or malconduct in the discharge of his official duties as Mayor of the City of Palatka. 5th. That the first specification in said petition, to wit: " That the said James C. Donnelly appointed one A. Knight a policeman," did not show that petitioner appointed said Knight with any corrupt or evil motive, purpose or intention. 6th. That petitioner had a legal right to appoint said Knight a policeman, and from aught

that appeared in said charges and specifications, in so appointing him petitioner acted honestly in the discharge of his duty as Mayor. 7th. That it did not appear in and by the second specification in said petition, viz: "That James C. Donnelly undertook to prevail upon B. F. Lassiter to withdraw charges therein mentioned against A. Knight" ; that petitioner had acted in his official capacity as Mayor, or that he in any way used his official authority and influence to induce the said Lassiter to withdraw said charges. 8th. That it did not appear that the matters and things set forth in said second specification specially related to petitioner's execution of the office of mayor. 9th. That the matters and things as set forth in the said second specification constituted any offence against the duties of the office of mayor, nor against the law of the State. 10th. That the charges and specifications, as set forth in said petition, were not sufficient in law to warrant the expulsion of petitioner from office ;"

That the demurrer containing the foregoing grounds was duly certified and sworn, and in due form, and was duly filed ; and the said council then and there sitting to hear said demurrer, did then and there take vote, and did vote and resolve that said demurrer be overruled, and the same was done ;

That upon the overruling of said demurrer the said City Council did call upon said petitioner to plead to said charges, and when petitioner, upon advice of his counsel, did refuse so to do, upon the grounds that there were no proper charges to which to plead, the said City Council did order that a plea of " not guilty " be entered, and that the taking of testimony do proceed ; whereupon witnesses were sworn and testimony was taken therein ;

That after the taking of said testimony before the said council, the said council did then and there take vote upon

the matter, and did resolve that the said charges were sustained, and that petitioner be dismissed and expelled from his office of Mayor of the said City of Palatka ;

That said resolution expelling said petitioner, is as follows :   " WHEREAS, It appears to us that the charges preferred against James C. Donnelly, Mayor of the City of Palatka, Fla., by divers citizens of said city, are sustained by the proof; be it, therefore, *Resolved*, By the City Council of said City of Palatka, Fla., that the said James C. Donnelly is guilty of the charge of disorderly behavior and malconduct in office, and he is hereby expelled from the office of mayor of said City of Palatka, Fla.

" COUNCIL CHAMBER, June 23, 1885."

That the said City Council do now withhold from him his office, and do now refuse to allow him to exercise the functions thereof, and do wrongfully and illegally prevent his acting as mayor, and did wrongfully and illegally expel him therefrom.

The return and amended return of the respondents stated substantially the same facts as the recitals of the alternative writ, but further stated that the relator, by his counsel, had cross-examined the witness for the prosecution in said proceeding before respondents, and had made his own statement under oath ; that, upon the expulsion of relator, Henry R. Teasdale, President of the City Council, " entered upon and assumed the duties of Mayor of said city, and is now discharging his duties as Mayor of said city ;" that, " between the date at which said charges were preferred against the said relator and the date of his expulsion from the office of Mayor, aforesaid, the said James C. Donnelly, relator as aforesaid, is charged with having committed acts of disorderly behavior, and mal-conduct in office, which, if sustained, will result in his expulsion from office, if reinstated therein under these proceedings."

The affidavits of said Daniel Waldron, B. F. Lassiter and C. J. Perry, hereto annexed, * * * and prayed to be taken as a part of this return, set forth more clearly the particulars of said disorderly behaviour and malconduct in office.

The other facts of the case are stated in the opinion.

*R. W. Davis* and *E. M. Vary* for Relator.

1. The test of jurisdiction by mandamus is whether the order of the subor linate court, which it is sought to correct, is of such a nature as to be the subject of appeal or other corrective remedy. High on Ex. Rem., §180.

In Florida there is no mode of appeal from a City Council, nor is there any other corrective remedy.

Wrongful amotion of a member of the Common Council of a city affords good cause for relief by mandamus. Ibid, §408; Rex. vs. Town of Liverpool, Burr., 723; 9 Wis., 254; 54 Texas, 388.

When the specific charge stated is insufficient to justify the removal, or when the removal is erroneous, and no good and sufficient ground therefor appears, the officer is entitled to *mandamus to restore.* Dillon on Mun. Corp., §255.

A court of equity has no jurisdiction to entertain a bill to enjoin the mayor and alderman of a city from removing a party from office and appointing a successor. The party's remedy at law is complete by *quo warranto* against the successor, or *mandamus* against the mayor and council. * * Where a person is improperly removed from office by the mayor or aldermen of a city, he may compel them by *mandamus* to restore to him any evidence of his right to office, or any property pertaining thereto, which they may im-

42

properly withhold from him. And where the title to the office is not in dispute, *mandamus* will lie to restore the person entitled to it. 75 Ill. R., 185.

2d. It has been shown that there was nothing before the City Council upon which to try the Mayor, except the memorial of citizens; no formal complaint, no warrant, no affidavit, no resolution of council.

The ordinances of the City of Palatka do not provide any mode of procedure in matters of this nature.

" Respecting the proceedings to *amove*, it has already been observed that they must be had by and before the authorized body, duly assembled in conformity with the rules on that subject, elsewhere stated. *. * * And if the organic law of the corporation is silent as to the mode of procedure, the substantial principles of the common law as to proceedings affecting private rights must be observed." Dillon on Mun. Corp., §253 ; 1 Bush (Ky.) R., 176.

Even where attorneys of the courts in this State are sought to be disbarred upon complaint, the courts will not hear or receive such complaint unless made on oath, and the charges made specific and particular. 12 Fla. R., 278.

3d. The City Council claimed the right to try and expel the Mayor upon the ground that under the law of Florida the Mayor himself as a member of council. The statute says : " They shall then proceed to choose, by a vote of a majority of the said electors, a Mayor and not more than nine nor less than five aldermen, who shall be known as the City Council, and in whom shall vest the government of the city." McC. Dig., sec. 4, p. 246.

And again the Council claim the right to expel the Mayor, not only because they assert he is a member of the Council, but upon the further ground that he is an officer of the town.

" * * * * * * and two-thirds of the Council

may expel a member of the same or other officer of the city or town for *disorderly behavior or malconduct in office."* McC. Dig., sec. 15, p. 248.

We can neither conceive or concede that this statute intended to confer on Council the power to amove or expel a Mayor, but granting the proposition for the purposes of this case, then the only causes for which they could amove would be " disorderly behavior or malconduct in office."

" When the terms under which the power of amotion is to be exercised. are prescribed, *they must be pursued with strictness."* Dillon on Mun. Corp., sec. 245 ; 54 Texas, 388.

Albert Knight was under no legal disqualification, and was merely under a charge in the State courts for an alleged offence against the laws of the State for which he had not been convicted. The mayor had a legal right to appoint him as a policeman, and he committed neither disorderly behavior or malconduct in office in so doing. As to the further charge that he " endeavored to prevail " on Lassiter not to prosecute in the State court (a charge not sustained by the evidence), this having no relation to municipal affairs, it was neither disorderly behavior or malconduct *in office.*

The offence must be such as to bring reproach upon the officer and not merely upon the man in a social or moral sense. To receive a bribe for his official influence in matters relating to municipal affairs has been held to be disorderly conduct in office, but a charge of gambling, and the like, having no relation to *official* conduct, has been decided not malconduct in office. Ibid, sec. 246 ; Mayor vs. Shaw, 16 Ga. R., 172.

There are three classes of offences for which an officer of a corporation may be discharged, but we contend that the dignity of a Mayor's office is of such a character as that a

Council could not expel him under either. Again, admitting for the purposes of this case that they may, then we put these charges and the evidence in this case to the test under each of the three classes:

1st. Offences which have no immediate relation to his office, but are themselves so infamous as to render the offender unfit to execute a public franchise.

2d. Offences such as are only against his oath of office amount to breaches of the tacit condition annexed to his franchise of office; and,

3d. Offences of a mixed nature—as being an offence not only against the duty of his office, but also a matter indictable at common law.

As to the first class, the offender must have been convicted in a court of law; as to the second, the facts must be absolutely and fairly established by proof under properly made charges; and as to the third, it must be shown that the alleged offence not only affected his legal duty as Mayor, but was indictable at law. Dillon, sec. 251, and cases cited.

The charge here that the Mayor committed an "official outrage" in appointing the policeman is not a charge of disorderly behavior or malconduct in office, nor is the charge that the Mayor "endeavored to prevail on B. F. Lassiter, on whose affidavit the warrant was issued for the arrest of said Knight for the perpetration of said crime, to withdraw said prosecution" any charge of disorderly behavior or malconduct in office.

And lastly, if the charges were good in law the evidence does not sustain either. So far from being sustained it will be easily apparent to this court that relator was entitled to full exoneration before the Council.

*J. A. Wigg* and *J. W. Malone* for Respondents.

1. City Council, as a Court, has power to expel on a two-third vote. McClellan's Dig., sec. 15, page 248.

As to inherent power to expel. 1 Dil. Mun. Corp., sec. 242.

City Council sitting as a Court, authorized by Constitution of Florida. Art. VI, sec. 15, Con. of Fla.

Relator is a member of City Council and so subject to amotion. Sec. 4, page 246, McC's. Dig.

If relator not a member, then he is a city officer and is liable to be expelled.

2. Trial of relator regular. Essentials to amotion, Council regularly assembled. Charges against officer. Notice of charges. Hearing of evidence in support and opportunity of defence. 1 Dil. Mun. Corp., sec. 250 to 255 ; 12 Pick., 263 ; 32 Ind., 74 *et seq.* ; 1 Dutcher, 538 ; 6 Lansing, 258 ; 22 Iowa, 75 ; 6 B. Monroe, 157.

3. Mandamus will not lie to City Council in the cause, they being vested with a discretionary power of a judicial nature and having exercised same. High. Ex. L. R., secs. 44, 34, 42, 156, 325, 403, 404 ; 18 Wend., 79 ; 21 Wend.. 22 ; 3 Dal., 84 page ; 3 Fla., 202 ; 15 Fla., 317.

4. Mandamus will not lie when there exists another adequate legal remedy. High. Ex. L. R., secs. 117, 188, 189 ; note 3, page 169 *id.*; 2 Denio, 193 ; 20 Wend., 68 ; 1 Ind., 18 ; 24 Cal., 78.

Here Relator has by statute right to appeal—writ of error—certiorari. McC's. Dig., sec 35, page 253.

Quo warranto. Dil. Mun., Corp., Chap. XXI.

5. Writ will not be granted if it appears relator can be removed again by same body for good cause. High. Ex. L. R., sec. 410–475 ; 1 Dil. Municip. Corp., sec. 254 ; 1 Dow. & Ry., 389 ; 3 Barn. & Adol., 255.

MR. JUSTICE RANEY delivered the opinion of the court:

1st. The Mayor of a city is without doubt an " officer of the city," and may, under section 15, page 248 of McClellan's Digest, be expelled by " two-thirds of the Council " from his office " for disorderly behavior or malconduct in office." It would be a hopeless task to attempt to show that he was neither a city officer, nor removable under the statute. It is not necessary that a city officer should be a member of the Council, to be so removable.

2d. There is under our judicial system no writ of error or appeal to any court from the action of a City Council expelling a city officer under this statute. The writ of mandamus is the only means of review or remedy for wrong in such cases. We consider it settled in this State that in such cases the court granting the writ can and should look into the whole case, including the testimony and ascertain whether or not injustice has been done. State *ex rel.* vs. Kirke, 12 Fla., 278.

The question to be disposed of is whether the record discloses " disorderly behavior or malconduct in office " upon the part of the relator.

In the charter of Jersey City, in the State of New Jersey, there was a provision authorizing the Common Council to expel a member for " disorderly conduct." In the case of the State *ex rel.* Tyrrell vs. The Common Council, 1st Dutcher's Repts., 536, it was contended for the relator that the words last quoted covered only "acts of turbulence, violence or disorderly conduct in the body and during the sessions of the Common Council." The Supreme Court of that State held, however, that receiving bribes for his official influence and votes was disorderly conduct upon the part of a member within the meaning of the charter. The

court say : " But we are to construe the words in reference to the subject matter with which the Legislature was dealing when it used them. They had reference to the conduct of a member of Council *as such*, not as a member of .the corporation, nor as a citizen, but as *a member of Council acting in his official character*, no matter where or when. He who intrusted with official power violates his public obligations, and abuses the public confidence by selling his official influence or vote in the body of which he is a member, is guilty of disorderly conduct of a far deeper dye than he who merely forgets the proprieties of official business and intercourse. The violation of a rule of morals is a more heinous offence than the violation of a rule of order, as crime is more base and malignant than turbulence. Any conduct which is contrary to law is within the definition of disorderly conduct as given by standard lexicographers, and any gross violation of *official* duty on the part of a member of the Common Council is within the *legal* meaning of the words used in the charter."

The Constitution of the United States (Art. 1, §5, par. 2,) provides as to Congress that " each House may * * punish its members for disorderly behavior, and with the concurrence of two-thirds expel a member." " Under this power," says the opinion above referred to, " the Senate in .1797 expelled a member of that body for an offence not committed in his official character as a member, nor during a session of Congress, nor while the member was at the seat of government. But it is not clear that the power to expel is limited by the Constitution to the cause of disorderly behavior, and in that respect it differs from the language used in the charter of Jersey City." By referring to the "Annals of Congress," p. 43, vol. 1, we see that the member in question was expelled " for having been guilty of a high misdemeanor entirely inconsistent with his pub-

lic trust and duty as a Senator." The conclusion of the re-
port of the committee recommending such action indicates
the character of his offending, and is as follows : " But
when they consider his attempt to seduce Carey from his
duty as a faithful interpreter, and to employ him as an en-
gine to alienate the affections and confidence of the Indians
from the public officers of the United States residing among
them; the measures he has proposed to excite a temper
which must produce the recall or expulsion of our Superin-
tendent from the Creek nation; his insidious advice tend-
ing to the advancement of his own popularity and conse-
quence, at the expense and hazard of the good opinion
which the Indians entertain of this government, and the
treaties subsisting between us and them, your committee
have no doubt that Mr. Blount's conduct has been inconsis-
tent with his public duty and renders him unworthy of a
further continuance of his present public trust in this body
and amounts to a high misdemeanor." Both the report
and resolution show that the expulsion was for conduct in-
consistent with his *public trust* and *duty* as a Senator, and
amounting to a high misdemeanor and neither treats his
conduct as mere " disorderly behavior." In Commonwealth
vs. Guardian of the Poor, 6 S. & R., 473, it is said that
the offences for which a corporate officer may be removed
have been divided into three classes : 1st. Such as relate to
his corporate or official character amounting to breaches of
the conditions tacitly or expresslv annexed to his office ;
2d. Such as have no immediate relation to his official char-
acter, but are in themselves of so infamous a nature as to
render him unfit to enjoy any public office ; 3d. Offences
of a mixed nature, being not only against his corporate or
official duty, but indictable at common law. See also 1st
Dillon's Municipal Corp., §251. Judge Dillon says that in
offences of the second class (as stated above) the removal

can only be made after there has been a previous conviction in a court of law; but that in those of the first-class the corporation may try and if the charge is established remove, without any previous or other proceeding in the court, and that as to the third class the English Judges have differed as to the necessity of a prior conviction in a court of justice. Ibid, 251.

If we give the words " disorderly behavior " a wider meaning than that which the counsel for relator in the Jersey City case contended for, we still find nothing in the authorities which would extend them beyond either acts done in the particular official capacity, or inconsistent with official trust and duty, or amounting to a breach of the condition tacitly or expressly annexed to the office.

We do not find it necessary, however, in the case before us, to draw the line of distinction between " disorderly behavior," and " malfeasance in office," under our statute.

The appointment of Knight as a policeman, while not prudential, nor to be commended, cannot, we think, be held to be either disorderly behavior, or malconduct in office. There is nothing disqualifying him in law to be a policeman; no violation by the mayor of any city ordinance either as to Knight's qualifications to be a policeman, nor as to the power of the mayor to make the appointment (if the latter point can be considered,) has been shown. We do not take judicial knowledge of city ordinances, and if any have been violated the burden was upon the city to show what they are, and the violation. Freeman vs. State, 19 Fla., 552. It is not shown that the mayor, in making the appointment, had any purpose to violate his duty, or believed that Knight would make a bad or inefficient policeman, nor is there any complaint that Knight performed his duties as a policeman other than efficiently, or that any injury was intended or resulted to the city from such ap-

pointment. There is no proof that Donnelly knew Knight was a frequent disturber of the peace and good order of society, although he had, as mayor, fined Knight once for disturbing the peace. Knowledge that Knight had violated the peace several times did not, of itself, render the appointment malfeasance in office, or disorderly behavior, nor did such violation of the peace *ipso facto* prove that the appointment was necessarily a breach of the mayor's official duty.

The appointments made of Knight were but two, lasting but one day each. Looking at what Donnelly did and the circumstances of his action, we do not see any such willful or gross violation of official duty as should necessitate a removal from office.

·The second specification is that the appointment of Knight was made while the latter was under arrest for a criminal offence, to wit: Knowingly and willfully offering and doing violence to an officer in the lawful execution of his legal duty. It is not alleged that the relator knew that Knight was under such arrest at the time he made the appointment. Upon this, however, we are not disposed to put stress, in view of the disposition which has been manifested that the case should be considered on its merits. It is, moreover, a rule that in the charges in such cases the technical nicety required in the indictment is not necessary. 1 Dillon, sec. 255. What is the evidence that Knight was under arrest for the offence alleged at the time he was appointed, or that, if he was so under arrest, the relator knew it? The first appointment was on the 8th, and the second on the 9th day of May, of the present year. On the 8th Perry resigned and Lassiter reported the fact to the mayor. An hour afterwards Knight reported to Lassiter, (whose testimony we are now stating,) that he, Knight, was on the police force, and showed to Lassiter the police badge he,

Knight, was then wearing. Sheriff Zehnbar had arrested Knight for carrying concealed weapons, and rowing about and disturbing election at the polls on the day of election. The election, we may remark, was on the 5th of May. Witness made affidavit on which warrant was issued for the arrest of Knight. On the cross-examination Lassiter says : "I did not arrest him ; he was turned over to me by Sheriff Zehnbar ; affidavit was made by me on the morning of the 8th of May before Judge Haughton."

Sheriff Zehnbar testifies that he does not recollect time exactly, but it was sometime about the election of the Constitutional Convention. Knight came to witness' office, and demanded the pistol, which witness had taken from him the day he arrested " him by order of the inspector of election ;" said to me he was a policeman ; " showed me the police badge which he was wearing, said he was appointed by Dr. Donnelly, the Mayor." Witness told him he could not have the pistol. Knight has been arrested on several occasions. He was arrested on charge of disturbing election for Constitutional Convention ; again, for carrying concealed weapons ; and again, for resisting officer. " I had Knight in custody for disturbing election, carrying concealed weapons and resisting an officer. He was under arrest for these crimes on the 8th, 9th and 10th of May."

A. V. Mount testified that Knight was on May 7th under arrest under a criminal charge. It was, as he " presumes," for riotous proceedings and disorderly conduct at the polls at the election on the 5th day of May.

Lassiter's testimony does not show that Knight was arrested or under arrest for the special offence alleged in the charge, (sec. 1, ch. 3276, Laws Florida,) nor can it be said that Zehnbar does. It does not go far enough.

Mount speaks only as to the 7th of May, the day before the first appointment, and not as to the offence alleged.

There is no proof that the relator knew that any arrest had been made of Knight for the alleged offence when he made either appointment.

We think it material that the testimony should have shown that Knight was under arrest for the particular offence alleged. In the absence of such a showing it is unnecessary to say anything as to whether such proof would have constituted disorderly behavior or malfeasance in office.

The third specification is that the relator did endeavor to prevail on B. F. Lassiter, on whose affidavit the warrant was issued for the arrest of Knight for the perpetration of *said* crime, to withdraw said prosecution. There is no proof that there was any affidavit made by Lassiter as to the alleged crime. This disposes of this feature of the case, yet we may remark that we hardly think the testimony shows any endeavor amounting necessarily to disorderly behavior or malconduct in office.

We think the testimony fails entirely to support the charges.

The peremptory writ is granted.