MARSHALL WOOLLEY, RELATOR, v. JOHN W. FLOCK, RESPONDENT.

Submitted October 7, 1918—Decided October 25, 1918.

Under the Walsh act (*Pamph. L.* 1911, *p.* 462, *ch.* 221) the office of "presiding officer of the board of commissioners" and as such "mayor" and "director of the department of public affairs" is for a fixed term of four years and not merely at the will of the board of commissioners.

On *quo warranto.*

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the relator, *Edmund Wilson* and *Gilbert Collins.*

For the respondent, *Thomas P. Fay* and *Herbert Boggs.*

The opinion of the court was delivered by

TRENCHARD, J. This action of *quo warranto* is brought to try the title to the office of "presiding officer of the board of commissioners" of the city of Long Branch, and as such "mayor" and "director of the department of public affairs" of the city.

The city of Long Branch is now and since May 16th, 1916, has been governed by the Walsh act (*Pamph. L.* 1911, *p.* 462, *ch.* 221) and its amendments.

At the first meeting of the duly elected commissioners, after the adoption of the act, the relator, Marshall Woolley, was chosen mayor, and from that time until displaced as hereinafter stated, presided at the meetings of the commissioners and acted as director of public affairs of the city.

On December 16th, 1917, one of the commissioners died, and on January 15th, 1918, at a special election, his unexpired term was filled by the election of another, and on January 28th, 1918, at a meeting of the commissioners, the respondent, John W. Flock, by a resolution adopted by a

majority vote, was chosen to "preside at all meetings of the board and designated mayor and director of the department of public affairs." By the same resolution, the relator was designated director of the department of parks and public property. Since that time the respondent has acted as presiding officer of the board of commissioners, mayor and director of public affairs.

It thus appears that on May 16th, 1916, the relator became vested with title to the office which the respondent is now holding, and the only question presented and argued is, What was his tenure? Was it for the life of the board, as he contends, or *durante bene placito,* as the respondent contends?

We are of the opinion that the relator's term was fixed by the statute for the life of the board, that is to say for four years.

True the act itself (and its various amendments) does not in express words fix the term. But we think the legislative purpose is not left in doubt.

Section 3 of the act as amended (*Pamph. L.* 1916, *p.* 406) reads in part as follows:

"At the first meeting after their election, the said commissioners shall choose one of their number to preside at all meetings of the board of commissioners, and he shall be designated 'mayor.'"

Section 2 (*Pamph. L.* 1911, *p.* 463) after reference to the initial election, declares that those who are elected "shall serve as such commissioners until the third Tuesday in May in the fourth year following such election and until their successors are elected and shall have duly qualified; and every fourth year thereafter, at the regular municipal election in such city, there shall be elected the number of persons as hereinafter provided as commissioners with like qualifications to serve for the term of four years and until their successors have been elected and duly qualified. * * * The term of office of such commissioners first elected under the provisions of this act shall commence on the first Tuesday following such election and the term of office of all succeeding com-

missioners shall commence on the third Tuesday of May next ensuing after their election, at twelve o'clock, noon," &c.

Section 4 as amended (*Pamph. L.* 1915, *p.* 494) reads in part as follows: "The mayor *shall be the director of the department of public affairs,* and *the board* of commissioners *shall, at the first regular meeting* after the election of its members, *designate* by majority vote *one commissioner to be director of the department of revenue and finance,* one to be director of the department of public safety, one to be director of the department of streets and public improvements, and one to be director of the department of parks and public property * * * and such *designation* may be changed whenever it appears that the public service would be benefited thereby. The board of commissioners shall at the first meeting, *or as soon as may be after organization,* create such subordinate boards and appoint such officers as it may deem necessary for the proper and efficient conduct of the affairs of the city. *Any board created, may be abated; or any officer or employe* appointed by the board of commissioners *may be removed* from office by them, at any time for cause, after public hearing," &c.

It is to be observed that the commissioners "choose" one of their number at their first meeting to preside at their meetings, and that the one so chosen "is designated" by the statute "mayor." It is also to be noted that while the commissioners at the first regular meeting after election "designate" other members of the commission to the several departments named, they do not designate the mayor as director of the department of public affairs. He is so designated by the statute. He who presides over the meetings "is chosen." The statute "designates" him as mayor, and also director of the department of public affairs.

By section 3 of the act, the mayor has no power of veto. Section 5 says that: "The mayor shall be president of the board and shall preside at its meetings and supervise all departments and report to the board for its action all matters requiring the attention of the board on any department. Director of the department of revenue and finance shall be

vice-president of the board, and in case of vacancy in the office of mayor, shall perform the duties of that office."

The act provides that the compensation of the mayor and commissioners in cities of the fourth class, to which Long Branch belongs, shall be as follows:

"In cities having from ten thousand to twenty thousand population, the mayor's *annual salary* shall be not more than twenty-five hundred, and that of each commissioner shall be not more than two thousand dollars." *Pamph. L.* 1915, *p.* 494, § 4.

It is to be observed that the term (as commissioner) for which the relator was elected by the legal voters was co-extensive with the respective terms of his co-commissioners, namely, the period of four years. It is of controlling significance that, when so elected, the statute requires that they shall "at the first meeting after their election * * * choose one of their number to preside." It is then, and then only, that the choice is to be made, except, of course, on the very improbable contingency that no one can be agreed on at the first meeting, and an adjournment is necessary, in which case the adjourned meeting will be the first meeting within the purview of the statute. This function of choice they are permitted to discharge but once, and the choice must be made immediately after all have been elected for a period of four years (it being otherwise with respect to subordinate boards or appointees). When so chosen the statute declares that, "The mayor shall be the director of the department of public affairs." Again it is provided that, "The compensation of the commissioners shall be fixed by an ordinance adopted by the board of commissioners *immediately after the organization* of the board, in accordance with all the provisions of this act." (Section 4.) The commissioners are then and by that method empowered to fix "an annual salary" to be paid monthly. These recitals of the statute make it clear, we think, that the office of presiding officer of the board of commissioners and as such mayor and director of the department of public affairs thus created are for a term fixed

by law; that the term so fixed is the life of the board, which, by the statute, is four years.

The case falls within the principle laid down in *Smith* v. *Regan,* 54 *N. J. L.* 167. There the question arose as to whether the term of office of a county collector was "fixed by law" within the meaning of the Soldiers' and Sailors' Exemption act. It was insisted there, as here, that, according to the act which governed, the term of office of a county collector was *durante bene placito,* and not for a fixed term. The statute under construction, however, required that the several boards of freeholders shall *"at their annual stated meetings* elect some fit person to the office of county collector * * * who shall continue in office and exercise all the duties appertaining thereto until his successor shall be lawfully elected," &c. The court held that "the positive injunction of the statute that 'at their annual meetings' the freeholders shall elect a fit person as collector, implies that such election shall be had at each meeting, from which it necessarily follows, as the meetings are to occur yearly, that the term of office is limited to the period of time between them, and is therefore fixed by law, within the meaning of the act of April 9th, 1889."

The analogy presented is controlling. Here there is a positive injunction that the presiding officer must be chosen "at the first meeting after their election." This positive injunction applies when each new board assumes its official duties. This occurs of necessity at intervals of four years. It is the initial act of organization of each new board. At such initial meeting, the commissioners are directed to make the choice. We may paraphrase thus what was said in Smith *v.* Regan: From this it necessarily follows that, as the meetings (for the purpose now considered) are to occur at intervals of four years, the term of office is limited to the period of time between them, and is therefore fixed by law, within the meaning of the act, for the term of four years.

*Burgan* v. *Civil Service Commission,* 84 *N. J. L.* 219, elucidates the same principle of construction. The act creating county boards of taxation provided that each board shall "upon organization" have power to employ a secretary and fix his

compensation. The question raised was as to whether or not, under the Civil Service law, one so employed as secretary had entered upon a term of employment fixed by law. The question was answered in the affirmative. In construing the County Board act the court found two facts upon which the opinion was made to turn: First, that the board of taxation upon organization was required to employ a secretary; second, that under the statutory scheme, one member of the board went out each year, and a new member took his place. The conclusion followed that the life of the board was accordingly one year, namely, for the period during which the personnel remained unchanged; and that, therefore, the term of office of the secretary was co-extensive with its life. Here the same statutory essentials are present: First, the presiding officer, who becomes *ipso facto* mayor and director of the department of public affairs, must be chosen at the first meeting after election; second, under the Walsh act, each member of the board so elected serves for a term of four years. In like manner, the conclusion must follow that the life of the board is for a period of four years, namely, for the period during which the personnel remained unchanged, and the choice of the presiding officer is accordingly co-extensive with the life of the board.

The cases of *Bilderback* v. *Freeholders of Salem,* 63 *N. J. L.* 55, and *Young* v. *Stafford,* 86 *Id.* 422, are also in point.

If that view were not adopted it would follow that the choice of the relator as presiding officer and his service as mayor and as designated director was merely *durante bene placito,* and that, without cause or pretext, he might be removed and his duties assumed by another at the whim of his fellow commissioners. Certain express provisions of the statute negative this theory, not only those commented on but others also. For example, if the term were merely for the pleasure of the board, how shall we explain the mandate of the statute which requires that the "annual salary" of the mayor and commissioners shall be fixed by an ordinance adopted by the board immediately after its organization? This is wholly inconsistent with the suggestion that the mayor

might be chosen to-day and removed to-morrow. The salary is an "annual salary." This looks to permanent service under a fixed term.

Again, the act provides, as we have already seen, that "in case of vacancy in the office of mayor," the duties of his office shall be performed by the vice-president of the board, who is the director of the department of revenue and finance. If the position of mayor and presiding officer might be filled, then vacated, and filled again at the will of the board, why does the act provide this complete, sweeping general method of filling the vacancy? This, too, points to permanency, and is wholly inconsistent with the suggestion that the time of service is one which shall endure merely at the pleasure of the commissioners.

But again, the office of mayor is traceable back at least "to the commencement of the time of legal memory," or the beginning of the reign of Richard the First. In England the office was sometimes elective, more often appointive, but always for a fixed period. In our own state innumerable statutes will be found creating and controlling the office of mayor, but all, so far as we have been able to ascertain, for a definite and fixed period. With this historical prelude, it is most natural to conclude that the legislature in passing the Walsh act did not contemplate that functions of grave importance and vital public interest should be first exercised and then withdrawn at the will of the members of the governing body. There is nothing in the act to indicate a design to make the office of mayor ambulatory. If the mayor may be removed, as here attempted, after service of two years, then why not after the expiration of two months, or indeed two days? Such a result would rob municipal government not only of its dignity, but its stability as well. The powers to be exercised by the mayor are important and far-reaching. They appertain not alone to the direct and immediate concerns of the municipal government. They are also extended to kindred affairs which vitally concern municipal life and welfare. The mayor, by virtue of his office, is a member of the library board, under the Library act. *Comp. Stat., p.*

3117. He appoints members of the board of education. *Comp. Stat., p.* 4735. He is *ex officio* member of the board of school estimates. *Comp. Stat., p.* 4745. The theory of the Walsh act was that the best form of municipal government was one which would centralize responsibility, that responsibility centralized and individualized could not be shirked or shifted, and that thus those who were immediately responsible for bad government could be directly and individually held to personal accountability. This being the theory of which the Walsh act is the fruit, it would be surprising indeed to find that the legislature formulated therein a scheme by which the individual duty and responsibility of the mayor and director of public affairs might be shifted and changed from day to day by the board. That it did not do. He holds for a term of four years and not merely at the will of the board of commissioners.

Judgment will be entered in favor of the relator, with costs.