ELMER E. COYTE ET AL., PROSECUTORS, v. A. GRACE KING, CLERK, ETC., DEFENDANT.

Submitted May 12, 1933—Decided September 15, 1933.

Before Justices CASE, BODINE and DONGES.

For the prosecutors, *Lester C. Leonard*.

For the defendant, *James D. Carton, Jr.,* and *William J. O'Hagan*.

PER CURIAM.

This writ of *certiorari* seeks to set aside the "conduct of the defendant in failing to call the special election," an election sought to be held to permit the voters of Asbury Park to decide whether or not they wished to adopt the city manager form of government.

It appears that on February 21st, 1933, there were filed with the city clerk, A. Grace King, petitions asking such an

election signed by one thousand four hundred and sixty-six names. Fifteen per cent. of those who voted at the preceding assembly election are required. The number required in Asbury Park was one thousand one hundred and nine, so that three hundred and fifty-seven names more than were needed appeared on the petitions. The clerk took no action on the petition and seventeen days later, on March 11th, a rule to show cause for *certiorari* was obtained, and upon the return of the rule on March 14th, Mr. Justice Bodine allowed the writ.

The contention of the prosecutors is that the failure of the clerk to call the election amounts to a determination by her that the petitions were insufficient and a refusal to act. Her position was at the time the depositions were taken that she had not yet made up her mind and had taken no action reviewable by *certiorari*.

1. The first question is whether *certiorari* is the proper remedy. Defendant claims she has not taken action as yet and the proper procedure would be *mandamus* to compel a decision and then *certiorari* to review it if it be unfavorable. In view of the limitation of time within which the election must be held, the conduct of the clerk has been such as to amount to a refusal to call the election, which refusal would be based upon a determination that the petitions were not adequate. It has been held that the clerk performs a judicial and not a ministerial function in passing upon petitions for elections and in deciding whether or not to call such an election. *Baker* v. *Reeves,* 9 *N. J. Mis. R.* 1303; 157 *Atl. Rep.* 174; *Balm* v. *Cape May,* 101 *N. J. L.* 400; 127 *Atl. Rep.* 923. The day on which the rule to show cause in this case was returnable was the last day under the statute on which persons might apply for watchers for the election, if one was to be held. There is in effect such a determination as may be reviewed by *certiorari*.

2. As to the facts developed by the depositions, it appears that the prosecutors offered the testimony of a Dr. Bryan who told of filing the petitions and testified as to certain signatures thereon having been procured by him and made in his presence. Prosecutors rested and the defendant offered

the testimony of various witnesses to the effect that they had been tricked into signing by false statements of the solicitors as to the purport of the petition. Handwriting experts testified that certain signatures were forgeries. The clerk testified to irregularities and one Robert Bartley, city water superintendent, gave evidence that he had checked the petitions against the poll and registry books to ascertain whether the signers were qualified voters.

The net result of the check-up seems to have been that one signer was not a citizen; seven signers gave addresses which they did not occupy; fifty-one names were undecipherable; sixty-six were testified to be forgeries; nine hundred and twenty-seven names, according to Bartley, did not appear in the registry and poll books. It is the propriety of striking off or disregarding these last mentioned nine hundred and twenty-seven names that is challenged here, because if the action of the clerk with respect to the other names, alleged to be forgeries, &c., be correct, there were still sufficient to require an election if the nine hundred and twenty-seven be proper signatures.

Bartley read a list of names which he said he could not find in the voting books. Upon cross-examination, however, some interesting information as to the methods he employed in checking the lists was developed. On page 358 of the record, for instance he discusses the case of one Groce. On the registry and poll lists appeared the name of Louis P. Groce, 930 Summerfield avenue. On the petition appeared the name of a Louis Groce, at the same address, but Bartley said the middle initial of the signature looked like an R to him, rather than a P, and therefore he could not count this name. Another instance: the name of Dr. W. W. Beveridge, 1000 Grand avenue, appeared on the petition. In the registry book was a William W. Beveridge, same address, and in the poll book a Dr. Wm. W. Beveridge. So this name was stricken off. Frank H. Cole, 610 Eighth avenue, signed the petition. In the voting books his name was Frank Cole, same address, with no middle initial. This invalidated the signature, according to Bartley.

This witness said: "I am not dealing with individuals in checking these signatures; I am dealing with signatures." He said if his own name were concerned and it appeared Robert Bartley in one place and abbreviated Robt. Bartley in another, it would not count. These tests, he testified, he applied throughout.

These facts lead to the conclusion that the evidence of this witness as a challenge to the qualification of any of the signatures or petitions is utterly worthless and should be entirely disregarded.

In rebuttal the prosecutors produced the solicitors who secured the signatures to the petitions, and they testified that the signatures were genuine (except in a few admitted cases where someone else wrote the names, allegedly with the permission of the individual), that they had been signed in their presence, and that each person had had explained to him the nature of the petition, and there was no misrepresentation or fraud employed.

There was an attempt to have certain persons withdraw their names from the petitions by written instructions to the clerk, but this practice is prohibited by *Balm* v. *Cape May, supra,* and there is now no serious effort to give effect to these withdrawals.

In this state of the proofs, the clerk was in error in refusing to call an election. Prosecutors have made out a *prima facie* case showing the filing of petitions with sufficient signatures to require an election. The attempt to justify her refusal because of the invalidity of certain signatures fails because of lack of proof. The testimony of the solicitors as to the genuineness of the petitions is sufficient to at least put the burden on the clerk to justify her refusal to accept the petitions for their face value. She has failed to show sufficient irregularities to take the number of signatures below the required fifteen per cent.

The prosecutors are entitled to judgment that the clerk has in effect determined not to call an election because of the insufficiency of the petitions, and that this determination is erroneous and should be set aside.