STATE, *ex rel.* GEORGE COUPER GIBBS, Attorney General, v.
A. D. F. BLOODWORTH

184 So. 1.
Opinion Filed October 17, 1938.

*Wm P. Allen,* Assistant Attorney General, *Redfearn & Ferrell, Richard H. Hunt, Evans, Mershon & Sawyer* and *Herbert S. Sawyer,* for Relator;

*J. W. Watson, Jr.,* and *E. F. P. Brigham,* for Respondent;

*Charles W. Zaring,* as *amicus curiae.*

PER CURIAM.—This is a case of original jurisdiction. On the 6th day of September, 1938, the Attorney General of the State of Florida, exhibited his information in quo warranto in behalf of Frank J. Kelly, City Clerk of the City of Miami, Florida, in this Court to oust and otherwise test the right of A. D. F. Bloodworth to exercise the title, privileges and franchises of the office of the City Clerk of the City of Miami. On the return day of the rule *nisi* issued A. D. F. Bloodsworth, respondent, filed an answer to the rule *nisi* previously issued, in which it was admitted that

Chapter 10847, Special Acts of 1925, Laws of Florida, is silent as to the tenure of office of the City Clerk of the City of Miami and that no definite period as to holding the office is fixed thereby and that summarily the removal by the City Commission of Frank J. Kelly on the 11th day of July, 1938, was within the power of the City Commission. The answer recites that the relator was on the 13th day of May, 1937, appointed as City Clerk by the City Commission of the City of Miami and that the City Clerk falls within the unclassified civil service of the City of Miami as prescribed by Section 62 of Chapter 10847, *supra,* and for this reason he was, under the law, subject to removal at the will of the City Commission without specification of charges, notice, trial or hearing. Likewise, the respondent denies that the Commissioners, Robert W. Williams, John W. DuBose and Ralph Ferguson, against whom the recall petitions were pending, in adopting the resolution of dismissal acted fraudulently or with a corrupt motive or design to remove the said relator and thereby preventing him from certifying, according to law, the sufficiency of the recall petitions seeking the removal of the Commissioners from office and denied that the dismissal of the respondent was to hinder or delay the voters in exercising the right of recall as provided by the charter of the City of Miami, *supra.*

The relator, in due course, filed a demurrer to the return or answer filed by the respondent containing the grounds, viz.: (1,) The allegations of the said answer are insufficient to constitute a valid defense to the information and rule to show cause herein; (2) the City Clerk of the City of Miami is not an employee subject to civil service regulations; (3) the allegations failed to show authority of law by which respondent claims to exercise the office, franchises, power and duties of City Clerk of the City of Miami.

Simultaneously with the filing of the demurrer to respondent's answer a motion for judgment of ouster, the answer notwithstanding, was filed on the part of the relator with substantially the same grounds as those contained in the demurrer.

This Court had held that when a franchise or an office is usurped, even though the respondents have not entered upon the duties of their office, the remedy is at law by quo warranto, to be invoked after entry into, or exercise of authority under and by virtue of their election or appointment.. See McDonald v. Rehrer, 22 Fla. 198; Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 So. 473. The writ of quo warranto will not be issued where there is another ample and sufficient remedy provided by law for the relief sought. State, *ex rel.* Landis, v. Duval County, 105 Fla. 174, 141 So. 173, 176.

On May 13th, 1937, the City Commission of the City of Miami, pursuant to an election had and held shortly prior thereto, met and adopted the following resolution:

"Section 1. That Frank J. Kelly be and is hereby appointed as City Clerk of the City of Miami, a municipal corporation organized and existing under the laws of the State of Florida.

"Section 2. That all laws or resolutions in conflict herewith be, and the same are hereby repealed. Passed and adopted this 13th day of May, 1937."

Likewise, Resolution No. 10175 adopted by the City of Miami is, viz.:

"Resolution No. 10175

"A Resolution to Appoint Frank J. Kelly as City Clerk of the City of Miami.

"Whereas, there is a vacancy in the office of the City Clerk created by the removal of H. E. Ross;

"Now, Therefore, Be It Resolved by the Commission of the City of Miami:

"That Frank J. Kelly be, and he, is hereby, appointed as City Clerk of the City of Miami to fill the vacancy in the office of the City Clerk created by the removal of H. E. Ross.

"Passed and Adopted this 18th day of July, A. D. 1935."

The City Commission had the power under the Charter of the said City to pass or adopt the said resolution. It is provided by Section 4 (e) of Chapter 10847, *supra,* viz.:

"(e) The Commission shall elect one of its members as Chairman who shall be entitled mayor; also a city manager, a clerk, a city attorney, a judge of the municipal court and a civil service commission, but no member of the commission shall be chosen as manager or as a member of the civil service commission or to any other office or employment. The commission may determine its own rule of procedure, may punish its own members for misconduct, and may compel attendance of members. A majority of all the members of the commission shall constitute a quorum to do business, but a smaller number may adjourn from time to time."

Exhibit No. 3 of the answer shows a resolution removing Frank J. Kelly from the office of City Clerk of the City of Miami, and the same is, viz.: .

"Resolution No. 14297

"A Resolution Removing Frank J. Kelly from the Office of City Clerk of the City of Miami.

"Be It Resolved by the Commission of the City of Miami:

"Section 1. That Frank J. Kelly, be, and he is hereby, removed from the office of City Clerk of the City of Miami.

"Passed and Adopted, this 11th day of July, A. D. 1938."

It is contended that the City Clerk, when appointed is not given a definite tenure, but holds the office subject to the will of the Commission making the appointment, and that Section 62 of the Charter places the Clerk of the said City of Miami when appointed, into the unclassified service and his relationship to the City, after appointment, is the status of a servant or employee rather than that of an officer within the meaning of the charter. We have carefully considered Sections 16, 62 and 65 of the charter and the case of Bryan v. Landis, Atty. Gen., 106 Fla. 19, 142 So. 650.

We find no provision·in Chapter 10847, Special Acts of 1925, Laws of Florida, being the Charter of the City of Miami, giving the power or authority to the said City Commission to remove or discharge at will the Clerk of said City, as was attempted by the resolution adopted July 11, 1938, after his said appointment on May 13, 1937. Section 84 of said Charter Act makes all general laws of the State of Florida controlling municipalities applicable to said city effective and operative when no provision exists in the Special Law. Section 84 is, viz.:

"Sec. 84. *General Laws to Apply.*—All general laws of the State, applicable to municipal corporations, heretofore or hereafter enacted and which are not in conflict with the provisions of this charter or with ordinances or resolutions

hereafter enacted by the commission pursuant to authority conferred by this charter, shall be applicable to the said city; provided, however, that nothing contained in this charter shall be construed as limiting the power of the commission to enact any ordinance or resolution not in conflict with the constitution of the State or with the express provisions of this charter."

The Legislature of Florida, by Section 24 of Article III of the Constitution of Florida, had "the power to enact a uniform system of county and municipal government, which shall be applicable, except in cases where local or special laws are provided by the Legislature that may be inconsistent therewith." In the case of State, *ex rel.* Landis, v. Ault, 129 Fla. 686, 176 So. 789, this Court said:

"Being bound by the former decision of this court as to the construction and applicability of Section 24, Article 3 of the State Constitution, as amended by adoption at the general election of 1934, we must hold that until the Legislature has proceeded under that provision the power continues to enact special legislation affecting municipal corporations. See State, *ex rel.* Matthews, v. Alsop, 120 Fla. 628, 163 So. 80; State v. Town of Belle Glade in Palm Beach County, 121 Fla. 200, 163 So. 564; State, *ex rel.* Landis, Attorney General, v. Jones, 121 Fla. 216, 163 So. 590; State, *ex rel.* Brown, v. Emerson, 126 Fla. 576, 171 So. 663."

In the absence of a provision of the charter of the City of Miami controlling the removal of its duly elected City Clerk, and Section 84, *supra,* providing that the general laws of Florida applicable to municipal corporations shall control, we therefore hold that the following general law applicable to all municipal corporations shall control and guide the City Commission of the City of Miami in the removal

of its City Clerk, the said law being Section 2948 C. G. L.,
viz.:

"Powers of Council Concerning Election Returns, Ex-
pulsion, etc. * * * The City or town council shall have
power and authority to judge of the election returns and
qualifications of its own members, to make such by-laws
and regulations for their own guidance and government as
they may deem expedient, and to enforce the same by fine
or penalty, to compel attendance of its members; and two-
thirds of the council may expel a member of the same or
other officer of the city or town for disorderly behavior or
malconduct in office."

Section 12 of the Charter provided for the recall of any
member of the City Commission and the machinery for the
recall election can be placed in motion by any qualified
elector of the City as against any member of the Commis-
sion. When the recall is initiated, the Clerk of the City
shall deliver to the elector making the affidavit copies of
blank petition for such removal. The exact form of blank
petitions are to be delivered by the Clerk, and after many
details have been complied with, the petitions for recall
are returned to the Clerk, and it becomes his duty to check
and determine if fifteen per cent. of the total number of
registered voters of the city as shown by the registration
books of the City of Miami appear on the petition, and
after this fact is determined, if he finds such facts to
exist, it becomes his duty to certify the result of such
examinations, if sufficient, to the City Commission at its
next meeting, when the City Commission shall order an
election. It is shown by the record here that the relator
had completed his check of the eligible electors and was
about to certify, as required by the charter, that fifteen per
cent. of the voters favored a recall when the members of

the Commission sought to be recalled summarily dismissed the relator. The record shows:

"That said resolutions purporting to remove Frank J. Kelly as said City Clerk and purporting to appoint respondent, A. D. F. Bloodworth, to the office of City Clerk of the City of Miami were adopted by the affirmative vote of the three Commissioners against whom recall petitions were and are pending and that the other two Commissioners were opposed to each of said resolutions; that said Frank J. Kelly, through long tenure as City Clerk, has intimate and accurate knowledge of the records of the said office relating to the names and number of qualified voters of the City of Miami and from said records said Frank J. Kelly, prior to his purported removal, had determined that the recall petitions directed against three members of said City Commission were sufficient and that at the time of the adoption of said resolutions said Frank J. Kelly was engaged in the work of purging the registration books of the City of Miami, as directed by said decision of this Court, preparatory to certifying to the sufficiency of said recall petitions; that the motives of the three Commissioners against whom recall petitions were pending in adopting said resolutions were fraudulent and corrupt in that said resolutions were adopted for the purpose of preventing the said Frank J. Kelly from certifying, according to law, to the sufficiency of said recall petitions and for the purpose of denying to the voters of the City of Miami the right of recall granted to them in the said Charter of the City of Miami or unlawfully hindering and delaying said voters in the lawful exercise of said right of recall."

It is difficult to conceive or understand how Frank J. Kelly can be lawfully dismissed by the City Commission of Miami under Section 2948 C. G. L., which provides for the

expulsion of an officer of a city only "for disorderly behavior or misconduct in office."

The dismissed officer, as shown by the record here, at the time of his dismissal was discharging his quasi-judicial acts as provided by the Charter of the City and it was to the interest of the Commissioners sought to be recalled that the Clerk be dismissed, thereby thwarting, obstructing and hindering the recall election which was the will or desire of the electors signing the recall petition by dismissing the Clerk of the City engaged in the discharge of his duties as prescribed by the City Charter. It appears that such action is not justified by the charter provisions of said city nor of the general laws controlling their duties as municipal officers. Neither was it the will or intention of the Legislature in enacting Chapter 10847, *supra,* to create such conditions. See Snowden v. Brown, 60 Fla. 212, 53 So. 548; Curry v. Lehman, 55 Fla. 847, 47 So. 18, 21; City of Miami v. Romfh, 66 Fla. 280, 63 So. 440; State, *ex rel.* Davis, v. Rose, 97 Fla. 710, 122 So. 225.

It appears from the record that the dismissal of the relator is contrary to public policy as defined in 50 Corpus Juris, page 858, par. 61, viz.:

"* * * the courts have frequently and often approved of the statement that public policy is that principle of the law which holds that 'no one' can lawfully do that which has a tendency to be injurious to the public or against the public good; that rule of law which declares that no one can lawfully do that which tends to injure the public, or is detrimental to the public good; the principles under which freedom of contract or private dealing is restricted by law for the good of the community. 'Public policy' has been said to be synonymous with 'policy of the law,' and also has been defined as 'the public good.' In a less technical sense, especially with respect to legislative actions, 'public policy'

may be and often is nothing more than expediency, political expediency or the policy upon which governmental affairs are conducted for the time being; public sentiment. In a judicial sense, public policy does not mean simply sound policy, or good policy, but it means the policy of a state established for the public weal either by law, by courts, or by general consent."

In the case of State v. Gateway Mortuaries, Inc., 87 Mont. 225, 287 Pac. 156, it was said:

"Public policy is the legal principle that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good."

See also the following cases:

Tarbell v. Rutland R. Co., 73 Vt. 347, 51 Atl. 6: "The general rule of law is stated to be that whatever tends to injustice or oppression, restraint of liberty and natural or legal right, or to the obstruction of justice, or to the violation of a statute, and whatever is against good morals when made the subject of a contract, is against public policy and void."

Wakefield v. Van Tassell, 202 Ill. 41, 66 N. E. 830; "Public policy is a variable quality, but it is only variable in so far as the habits, capacities and opportunities of the public have become varied and complex and the principles to be applied have always remained unchanged and unchangeable. It is not the interest of the parties alone which is to be considered the true test but in each particular case under the facts the identical inquiry is, will the enforcement of the conditions be inimical to the public interest."

Pendleton v. Grever, 80 Okla. 305, 193 Pac. 885: "Public policy has never been defined by the courts, but has been left loose and free from definition in the same manner as fraud."

In the case of Etzler v. Brown, 58 Fla. 221, 50 So. 416, 138 Am. St. Rep. 113, this Court had before it the removal of a City Councilman of the City of Tampa for disorderly behavior and malconduct in office, and in passing upon the question said:

"Mandamus is the proper proceeding to test the validity of the action of a city council in expelling from office a member of the council. In such an action the court will consider the entire proceeding of the council, including the issues in effect made and the testimony taken before the council as shown by the alternative writ. If the proceedings were illegal or fatally defective or if the testimony wholly fails to support the charges made, the court will order the officer restored. See State, *ex rel.* Donnelly, v. Teasdale, 21 Fla. 652; Scott v. State, *ex rel.* Grothe, 43 Fla. 396, 31 South. Rep. 244.

"Section 1012 of the General Statutes provides that 'two-thirds of the council may expel a member of the same or other officer of the city or town for disorderly behavior or malconduct in office.'

"No particular procedure is prescribed by which the council may exercise its power to expel an officer of the city, but such proceedings should be had as will give the person charged an opportunity to be heard in defense of any matters alleged against him for which he may be expelled. If the matters alleged warrant expulsion, and there is legal evidence in support of the charges, and the person has had reasonable opportunity to defend, action taken by the requisite vote of the council in expelling a member of the council will not be disturbed by mandamus proceedings.

"The Court will determine whether the charges made and considered would if proven amount to 'disorderly behavior or malconduct in office.'

" 'One who is entrusted with official power, violates his public obligation, betrays his official trust, and loses the public confidence by selling his official influence or vote in a body of which he is a member, is guilty of disorderly conduct' in office. State, *ex rel.* Tyrell, v. Common Council of Jersey City, 25 N. J. L. 536; State, *ex rel.* Donnelly, v. Teasdale, 21 Fla. 652.

"Malconduct in office, like misconduct in office, includes such acts as amount to a breach of the gool faith and right action that are tacitly required of all officers. See 3 Words & Phrases, 4296 and 4532.

"The charge here is in effect that the relator agreed for a consideration to aid in securing a valuable contract with the City of Tampa through a constituted board of the city, and to secure an increase in the appropriation for the purposes of the contract to unduly increase the profits. There is evidence to sustain the charge and it is clear that such conduct was both 'disorderly behavior and malconduct in office' within the meaning of the statute under which the expulsion was had."

The resolution adopted by the City Commission appointing the relator to the office of City Clerk of the City of Miami failed to fix or state the period of time he was to hold the said office. Likewise, when his successor, who is the respondent here, was appointed to the office of City Clerk, the said resolution of appointment adopted failed and omitted to fix or state the period of time the said respondent was to hold the office of City Clerk. It is pertinent here to determine the period of time the Clerk shall hold office when appointed under Section 4 (e) of the Charter. It provides that "the Commission shall *elect* one . of its members as Chairman, who shall be entitled Mayor; also a city manager, a clerk, a city attorney, a judge of the municipal court and a civil service commission. * * *" Section

15 provides for the appointment of a city manager, who shall hold·office at the will of the City Commission. The statute means that the officials provided for in Section 4 (e) shall be elected and none of them shall hold office at the will of the City Commission when elected, but the city manager when *appointed* shall hold office subject to the will of the Commission. It was the intention of the Legislature to make the city manager at all times to hold office subject to the will of the Commission upon whom rested the administrative affairs of the city government, which could be speedily checked and corrected if necessary at the will of the Commission by a change in the office of city manager. The city clerk was granted but little discretion in the administration of his office. He was bound and under obligation to follow the plain mandates of the resolutions, ordinances and charter provisions controlling said city. If he erred, charges could be filed, a hearing granted, and such judgment entered as the exigencies required. The charter clothed the city clerk with quasi-judicial functions. Some of the duties are prescribed by Sections 12, 12 (a), 13 and 14 of the ·Charter. It is admitted upon the record that he was discharging the duties imposed by these provisions when dismissed by the vote or votes of the three Commissioners against whom the recall was directed. The attempted removal of·the Clerk by the three Commissioners rendered ineffective the charter provisions controlling recall elections. It was not the intention of the Legislature in enacting Chapter 10847 to grant such power to the City Commission of Miami and thereby enabling them to nullify the recall provision of the Charter by the expedient here adopted. If the Clerk had certified to the· Commission the results of his labors placed upon him by the charter and had not been removed, the recall provisions of the Chapter would have controlled as the Legislature intended when the charter was

enacted. It is clear that the City Clerk was elected by the City Commission on May 13, 1937, and was not to hold office subject to the political whim of the three Commissioners voting for his removal, thereby defeating the recall provision of the Charter, but he was to discharge his duties as provided for by the charter, ordinances and resolutions of the city until the next regular city election provided for in the Charter, being a period of two years after May 13, 1937, unless lawfully removed.

Forty-six Corpus Juris, page 964, par. 99, provides:

"Whether a public officer has a fixed term of office can be determined only by reference to the law creating the office; but a term of office may be fixed by law, although not so stated in express terms by the statute, where such a result is properly inferred from the construction of the statute as a whole. Where the office is to be filled by one authority and the duration of the term is to be determined by another, the declaration of such duration must be made before the office is filled, so that each authority may have its legitimate exercise."

See Coyte v. King (N. J. L.) 168 Atl. 158; Woolley v. Flock, 92 N. J. L. 65, 105 Atl. 489; Hayes v. Mobius, 96 N. J. L. 88, 114 Atl. 13; Wescott, Atty. Gen. Sexton, 87 N. J. L. 344, 94 Atl. 396; Warren v. McRae, 165 Ark. 436, 264 S. W. 940; Burgan v. New Jersey Civil Service Commission, 84 N. J. L. 219, 86 Atl. 929.

It therefore follows that the demurrer of the relator to the answer of the respondent to the information in quo warranto should be and the same is hereby sustained. The motion for judgment of ouster, the answer notwithstanding, is hereby granted. It is so ordered.

Ellis, C. J., and Whitfield, Terrell, Buford, and Chapman, J. J., concur.