HARDY BRYAN, *Plaintiff in Error*, vs. CARY D. LANDIS, Attorney General of the State of Florida, ex rel. GUY C. REEVE, *Defendant in Error*.

142 So. 650.

Division B.

Opinion filed June 18, 1932.

*J. W. Watson, Jr.*, for Plaintiff in Error;

*E. F. P. Brigham*, for Defendant in Error.

TERRELL, J.—On July 13, 1931, Guy C. Reeve was summarily removed from the office of Chief of Police of Miami, Florida, and Hardy Bryan was appointed to suc-

ceed him. On July 27, 1931, Reeve, in the name of the State, exhibited his information in quo warranto in the Circuit Court of Dade County praying that Bryan be ousted from the said office and that he (Reeve) be reinstated therein. A demurrer to the information was overruled, answer was filed, and on final hearing judgment of ouster was entered as prayed for. This writ of error was prosecuted to that judgment.

Numerous assignments were brought here but the cause turns on the sole question of whether or not under the terms of the city charter, the city manager of the City of Miami may summarily remove from office the chief of police without notice or opportunity to be heard in his defense.

The salient facts out of which this case arises are undisputed and are as follows: In May, 1928, the relator, Guy C. Reeve, was duly appointed chief of police of the City of Miami. He (Reeve) continued to perform the duties of that office until July 1931 when he was peremptorily removed on a charge of insubordination and respondent, Hardy Bryan, was appointed to succeed him. It appears that the acts of insubordination charged against Reeve consisted in his refusal to be demoted by resigning from the office of chief of police and accepting appointment as chief of detectives. He was first advised of his removal under Section Twenty-six of the city charter but a second letter was later sent him advising him of his removal under Section Sixteen. The city manager promptly advised the city commission that he had removed Reeve and Reeve immediately made demand on the city manager for the causes of his removal and for a hearing before the city commission. Both requests being denied. Reeve again requested that he be furnished with a specification of the charges against him and that he be given a hearing before the city commission. This request was denied and Reeve

as relator instituted this proceeding to determine his right to hold and enjoy the prerequisites of said office.

The matter of appointment to and removal from office in this country is governed by statutory or constitutional provision. Under the common law, an officer could be removed only for cause, after notice and hearing. In the absence of statute or constitutional provision regulating the subject matter the common law rule prevails in this State. Village of Kendrick vs. Nelson, 13 Idaho 244, 89 Pac. 755, 12 Ann. Cases 993, note 995. Statutes designed to change the common law rule must speak in clear unequivocal terms as this rule will not be changed by doubtful implications and if changed or modified, the change or modification extends no further than is expressly declared.

One appointed to hold office during the pleasure of the appointing power or for a fixed term unless sooner removed, if coupled with the power of removal, or when the power of removal is granted in general terms, may be removed at any time without notice or hearing. State ex rel. Tremblay vs. McQuaie, 12 Wash. 554, 41 Pac. 897; Sweeney vs. Stevens, 46 N. J. L. 344; State ex rel. Gallagher vs. Brown, 57 Mo. App. 199. It is also held that when the power of removal is lodged by statute in the discretion of any person or body of persons or depends on the exercise of personal judgment as to whether the cause of removal exists the officer is not entitled to notice and hearing prior to removal. People ex rel. Jones vs. Carver, 5 Colo. App. 156, 38 Pac. 332. It has been held that the power of removal is incident to the power of appointment and that removal may be made at the discretion of the appointing power, but this applies only where the appointee holds at the pleasure of the power making the appointment. Murphy vs. Board of Chosen Freeholders of Hudson County, 92 N. J. L. 244, 104 Atl. 304. The great weight of authority supports the rule that when an officer is appointed for a

specified term, or during good behavior, and provision is made generally for removal, or for grounds specifically stated, in the absence of a clear mandate of statute to the contrary, notice and opportunity must be given the officer to be heard in his own defense before his removal becomes final. Note to Kendrick vs. Nelson, supra, citing many cases; McQuillan on Municipal Corporations (2nd Ed.) Vol. 2, 316 and 319; State ex rel. Mosconi vs. Maroney, 191 Mo. 531, 90 S. W. Rep. 141; Murphy vs. Board of Chosen Freeholders of Hudson County, 92 N. J. L. 244, 104 Atl. 304.

A few jurisdictions approve the rule to the effect that a public officer holding for a fixed term, subject to removal for cause, may be removed without notice and hearing. Matter of Carter, 141 Cal. 316, text 319, 74 Pac. 997; Hertel vs. Boismenne, 229 Ill. 474; 82 N. E. 298; State ex rel. Williams vs. Kennelly, 75 Conn. 704, 55 Atl. 555. These cases seem to have been decided on the theory that the law under which the removals were accomplished did not in terms require that notice and hearing be given. They are contrary to the decided current of authority treating the question. We have examined Exkloff vs. District of Columbia, 135 U. S. 240, 10 Sup. Ct. Rep. 752, 34 L. Ed. 120, relied on by plaintiff in error but it was also disposed of on the theory that the act involved vested plenary power in the commissioners of the District of Columbia to dismiss members of the police force without notice or hearing.

From this review of the applicable law, it follows that in the absence of constitutional limitation, the legislature has ample power to prescribe the conditions under which municipal or other officers may be appointed or removed. The power to remove like the power to appoint may be absolute or conditioned, but in either event, the rule pre-

scribed must be followed with strictness. Mechan on Public Officers, paragraphs 448, 450, and 452.

The question presented here is resolved by an interpretation of Subsection "b" of Section Sixteen, and Section Twenty-six of the City Charter of Miami as follows:

Subsection "b," Section Sixteen:

"To appoint and remove, except as herein provided, all directors of the departments and all subordinate officers and employees in the departments in both the classified and unclassified service; all appointments to be upon merit and fitness alone, and in the classified service, all appointments and removals to be subject to the civil service provisions of this charter."

Section Twenty-six:

"The City Manager shall have the exclusive right to suspend the Chief of Police and Fire Chief for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders given by proper authority, or for any other just and reasonable cause. If either of such chiefs be so suspended, the City Manager shall forthwith certify the fact, together with the cause of suspension, to the commission who within five (5) days from the date of receipt of such notice, shall proceed to hear such charge and render judgment thereon, which judgment shall be final."

As an aid to the interpretation of these provisions, it is pertinent to state that under the City Charter of Miami, the City Manager is the administrative head of the City government (Section 15) and Section Sixteen defines his general powers and duties. Among his general powers, as defined in subsection "b" of Section Sixteen as quoted is that of appointing and removing, "except as herein provided," all subordinate officers and employees in the departments in both classified and unclassified service. The administrative departments of the city government were created by Section Eighteen of the City Charter and are as follows: (1) Department of Law, (2) Department of Public Service, (3) Department of Public Welfare,

(4) Department of Public Safety, and (5) Department of Finance. Sections Sixty, Sixty-one, and Sixty-two provide for the Civil Service to be composed of the classified and the unclassified divisions. The directors of these five departments including the subordinate officers and employees in both the classified and the unclassified service are appointed and removed by the city manager "except as herein provided," they being the identical officers and employees appointed by authority of subsection "b," Section Sixteen.

Other provisions of the city charter provide for appointments and removals in designated instances which affect every administrative department of the city government, and being so, they must be construed in connection with Subsection "b" of Section Sixteen. In the case at bar, we are concerned only with removals and as we shall now show the phrase "except as herein provided" employed in subsection "b" of Section Sixteen, qualifies or limits every provision of the city charter providing for removals in specific cases. State vs. Simpson, 94 Fla. 789, 114 So. 542; State ex rel. Finlayson vs. Amos, 76 Fla. 26, 79 So. 433; Atlantic Coast Line Ry. Co. vs. State, 73 Fla. 609, 74 So. 595; Goode vs. State, 50 Fla. 45, 39 So. 461; Hall vs. State, 39 Fla. 637, 23 So. 119; Sams vs. King, 18 Fla. 557; In re. Brearton, 89 N. Y. Suppl. 893, 44 Misc. Rep. 247; 25 R. C. L. paragraph 250; Chilson vs. Jerome, 102 Cal. App. 635; 283 Pac. 862; 26 Am. & Eng. Encyc. of Law, pages 618 and 619; Brickhouse vs. Hill, 167 Ark. 513, 268 S. W. 865; Watts vs. State ex rel Scott, 77 Okla. 199, 187 Pac. 797. In other words, when possible every part of an act should be given effect and when the same statute contains general and specific provisions on the same subject matter as is the case here, each must be given its legitimate field and scope of operation.

A cursory examination of the pertinent provisions of the

city charter definitely and conclusively clinch this view: Section 23 (a) provides that four-fifths of the city commission may remove any member of the Board of Hospital trustees. Section 25 provides that the Chief of Police and Fire Chief may suspend any officer or employee in their respective divisions for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders or for any other just and reasonable cause, provided the cause of such suspension be certified in writing to the director of public safety, who shall, after a hearing, render judgment which shall be final. Section 26, being one of the sections determinative of this case, provides that the city manager shall have exclusive right to suspend the chief of police and the fire chief for incompetence, neglect of duty, immorality, drunkenness, failure to obey orders, or for any other just and reasonable cause, provided that the city manager shall forthwith certify such suspension with the cause therefor to the city commission who shall within five days from receipt of same proceed to hear such charges and render judgment thereon which shall be final. Section 60 contains similar provisions for the removal of the members of the civil service board and section 65 contains like provisions for the removal of officers and employees in the classified service both for cause and for falling below standard.

From the foregoing review of the applicable provisions of the charter, we cannot escape the conclusion that the general power of removal contained in Subsection ''b'' of Section Sixteen is limited by the other provisions of the charter providing for removals in designated cases, that section twenty-six provides the sole and exclusive means for suspending and removing the chief of police, that he must be suspended for one or more of the causes therein enumerated, and that when such suspension has been certified to the City Commission and the cause thereof ex-

amined by them and found after a full hearing to be well grounded, then the commission enters its affirmative judgment which is final. When the affirmative judgment of the commission is entered, the suspension of the chief of police eo instanti becomes a removal, but if the judgment of the commission is in the negative, the suspension ceases and he is eo instanti reintated. If the removal is made in compliance with the terms of the city charter, it is not subject to review by the courts but the jurisdictional facts as a basis for exercising the power of suspension and removal as vested in the City Manager and the City Commission may be inquired into by the courts. State ex rel. Hatton vs. Joughin,. 103 Fla. 877, 138 So. 392.

This view harmonizes with what we conceive to be the whole tenor of the city charter, it accords with reason and the spirit of our institutions, it squares with the provisions of Section Fifteen of Article Four of the Constitution providing for the removal of state and county officers, it takes into account that part of Section 16 (b) requiring that all appointments be made on merit and fitness alone, and that in the classified service all appointments and removals be made subject to the civil service provisions of the charter. This interpretation also gives a clear field for the operation of both Section 16 and Section 26 of the City Charter.

This view is also in harmony with the fundamental reason actuating the adoption of the commission form of municipal government, a new concept in municipal policy, motivated and grounded on the principle of maximum efficiency for minimum cost. In other words, the greater boon and protection to society at the least burden commensurate with the protection given. How can this be if the power of appointment and removal is vested without recourse, in the City Manager or some other officer and

used as an instrument to reward friends and punish enemies?

Plaintiff in error contends that Section 16 of the City Charter authorizes the city manager to peremptorily remove the chief of police without giving any reason therefor, while Section 26 empowers him to suspend for the causes therein recited, which suspension becomes a removal if approved by the commission after investigation and hearing. This contention is equivalent to saying that if there are grounds for suspension the chief of police may be suspended and hence removed by action of the city commission but if no grounds for suspension exist, the city manager may sua sponte without ground or reason remove him. We find no support for this contention, certainly the best reasoned authorities are to the contrary, and if pursued, it would to all practical intents and purposes, nullify Section 26 and other provisions of the City Charter providing for suspensions and removals in designated cases. It would further place the police and the fire departments at the whim and caprice of the city manager.

We can see no good reason for requiring that all appointments be made on merit and fitness alone and then couple that requirement with both the power of peremptory removal and removal for cause with the additional requirement that when suspensions for cause are made, they shall be immediately certified to the city commission which shall proceed within five days to hear, investigate them, and then determine their regularity.

We have examined Myers vs. United States, 272 U. S. 52, 71 L. Ed. 160, 47 Sup. Ct. Rep. 21, relied on by plaintiff in error but we do not think it is in point. That case involved the power of the president to remove a postmaster appointed by him without the advice and consent of the Senate. The court found in effect that the power

to appoint was in the president, that there was no statutory or constitutional provision regulating the removal and when such was the case, the power to remove was incident to the power to appoint.

It is therefore our conclusion that the City Charter of the City of Miami provides a complete scheme for the appointment and removal of all officers and employees in the different departments of the city government, that Section 26 provides for the suspension and removal of the chief of police and that his removal must be accomplished by compliance with terms of that section.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.