I. J. GLENDINNING v. A. B. CURRY, as City Manager of The City of Miami, CHARLES L. CLAY, as superintendent of Jackson Memorial Hospital, and THE CITY OF MIAMI, a municipal corporation.

14 So. (2nd) 794      June Term, 1943
July 16, 1943      Division B
Rehearing Denied September 7, 1943

*E. F. P. Brigham,* for appellant.

*J. W. Watson, Jr.,* and *Franklin Parson,* for appellee.

BROWN, J.:

This is an appeal from an order of the Circuit Court of Dade County granting a motion to quash an alternative writ of mandamus. This order raises a question concerning the authority of the City Manager of Miami to order a merger of the position of superintendent of nurses of the Jackson Memorial Hospital, a City Hospital, with another "office," thus depriving Miss Glendinning, the appellant here, of her position as Superintendent of Nurses.

The petition for the alternative writ, to be directed to the City Manager and to the Superintendent of the Hospital, alleged that the petitioner was a graduate and registered nurse and well qualified for the position which she had been holding for some twelve years. She was appointed in 1930

to the position of instructor of nurses in said city hospital and in 1932 she was appointed superintendent or supervisor of nurses, the terms being used interchangeably, and that this was an "office" which pertained to the operation, running, management and control of the institution, and that for ten years she had performed the duties and functions of said "office" at a salary of $175.00 per month; that she was furnished an office in the hospital building with two assistants and one secretary to aid her in her work; that among her duties were those pertaining to the efficient and correct performance of their nursing duties by the undergraduate and graduate nurses and that at the time of her discharge on August 15, 1942 there were some two hundred and fifty persons under the direct supervision of petitioner; that she had to pass upon the credentials and recommend the admission or rejection of applicants for training and also had to give instruction in nurses' ethics regularly to the undergraduate nurses, also had to perform many other duties which were designated in the petition; that she enjoyed the confidence of the superintendent and assistant superintendent of the hospital.

The petition also alleges that the office of assistant superintendent of the hospital was "a full time job," and required all of the time of the person holding that position and that it was physically impossible for any one person to efficiently perform the duties of superintendent of nurses and assistant superintendent of the hospital, which duties are different and distinct and that as late as July 27, 1942, the budget recommendations prepared by the respondent A. B. Curry to the City Commission recommended and advised the Commission to keep and maintain the office of assistant superintendent of the hospital separate and distinct from that of supervisor of nurses and that money be appropriated for each of said positions for the fiscal year 1942-1943, and that the City Commission in its appropriation ordinance for that fiscal year complied with said recommendation of the City Manager, but that notwithstanding all this, said City Manager had on July 31, 1942, without any communication with or to petitioner or the superintendent of the hospital, or its Board of Trustees,

directed the respondent superintendent to combine the duties and functions of the two "offices" and to discharge petitioner, which said superintendent regretfully did, and notified petitioner that her services would be terminated on August 15, 1942. The letter of the City Manager to the Superintendent of the Hospital, dated July 31, 1942, reads as follows:

"For some time this office has been studying the organization structure of the Jackson Memorial Hospital and has come to the conclusion that it will be necessary, from time to time, to make adjustments which will tend to crystallize responsibilities and knit the working forces into a more closely coordinated organization.

"In line with this policy, you will please merge the duties and office of Superintendent of Nurses with the office and duties of Assistant Superintendent to the end that the nurses training and service become the direct responsibility of the Assistant Superintendent under your supervision.

"It is my wish that this be put into effect as of August 1, 1942, and you are requested and instructed to take such steps as my be necessary to make this effective on that date."

The petitioner further alleged that she frequently made efforts to see the City Manager and find out his reason for his action but an opportunity for an interview with him was never afforded.

The petition contained certain allegations with reference to the powers and duties of the Board of Trustees of the Hospital and of the City Commission and that the arbitrary action of the City Manager invaded the authority of both and that in combining said two offices he invaded the province of the City Commission without any delegation of authority so to do.

The petition also alleged that the office and position which petitioner had held was within the classified service of the Civil Service of the City and thereby protected against arbitrary removal without being furnished with a written statement of the reasons therefor and allowed a reasonable time for answering such reasons in writing; furthermore, that under the common law of the State of Florida a municipal officer cannot be removed in the absence of statute,

without notice and an opportunity to be heard. And that if petitioner is not within the classified service of the City her removal was illegal because the Board of Trustees had sole authority to take administrative action against petitioner and since they have not done so, the action of the City Manager was void and of no effect. The petition prayed that the respondents be commanded to reinstate petitioner in her former "position as superintendent of nurses and pay her salary accruing since August 15, 1942."

An alternative writ of mandamus was issued by the court which did not embrace within the order a copy of the allegations of the petition, as is customarily done, but it did contain this provision: "Now therefore it is considered, ordered and adjudged that a copy of the petition for alternative writ of mandamus, attached hereto as Exhibit A and by reference made a part thereof, shall be taken and considered as a part of this writ, and shall be served in accordance with the law, upon the respondents at the same time as this writ is served."

We think this procedure amounts to a substantial compliance with the usual rule. It is true that we have held that the petition for an alternative writ is no part of the proceedings and becomes functus officio when the alternative writ is issued thereon, and that the alternative writ when issued becomes in all respects the relator's declaration and is subject to the same rules of pleading as are applicable to declarations in ordinary legal proceedings. But we have also held that the alternative writ is not required to strictly conform to the petition, as is the peremptory writ to the alternative writ, for on information disclosed by the petition, the court may fashion the alternative writ to suit the case presented by the petition. City of Bradenton v. State, 118 Fla. 838, 160 So. 506; Meyers v. State, 81 Fla. 32, 87 So. 80. However, as above stated, we think the course pursued by the circuit court, as above outlined, was a substantial compliance with the usual practice.

The court later permitted an amendment to the petition and alternative writ, which amendment added two paragraphs. The first of these paragraphs (numbered X) alleged that at the time of relator's discharge Section 7 of the by-

laws and regulations of the Board of Trustees of said hospital provided that: "The Board reserves the right to remove any officer or member of the general staff . . . whenever in its sole judgment the good of the hospital or the patients therein may demand it," and that this was the only regulation of said Board concerning the removal of officers or members of the general staff of the hospital, and that petitioner was a member of said staff and subject to removal by said Board, but not by the City Manager.

The second additional paragraph (numbered XI) alleged that the respondent Curry as City Manager did not remove and discharge petitioner in good faith, and did not order the respondent Clay, the Superintendent of the hospital, to merge petitioner's office with that of the Assistant Superintendent of the hospital, in good faith; that the reasons stated in his letter to the Superintendent were false and untrue; that he was ignorant of the duties and functions of petitioner's office and that he merged the two offices to circumvent the law which required the giving to petitioner notice, cause of discharge and a hearing, in order that he might illegally take the money appropriated by the City Commission for the payment of petitioner's salary and use the same for a new employee of the hospital who was a friend of respondent Curry.

In the order of the Circuit Judge granting the motion to quash the alternative writ of mandamus it is said:

"It is fairly clear that plaintiff's position is that since she was and has been regularly employed by the City of Miami for a number of years, then by that fact and the provisions of Section 62 of the City Charter (ch. 10847, Acts of 1925) that she has thereby acquired the status of a civil service employee; that if a civil service employee then Section 65 of the Charter applies and has not been complied with; that if not a civil service employee then she can not be discharged except through action by the Board of Hospital Trustees as provided for by Section 23 (a) of the Charter (ch. 14234 Acts of 1929.)

"The position of the respondents appears to be that the alternative writ fails to show that petitioner has civil service status; that she was an employee of the hospital and subject

to the orders of the City Manager as provided by Section 23 (a) of the Charter (Acts of 1929, supre.)

"For other material provisions of the City Charter see Section 15, 19, 20 and 23.

"It is my conclusion that (1) the petitioner fails to show that she had a civil service status, or (2) that the act of the City Manager was beyond his power.

"Wherefore, in consideration of the Premises:

"It Is Ordered and Adjudged that the respondents' motion to quash the alternative writ of mandamus be granted."

From this order, dated December 15, 1942, this appeal was taken.

The appellant had made three assignments of error; (1) that the court erred in granting the motion to quash the .alternative writ of mandamus; (2) that the court erred in holding that the petitioner failed to show that she had a civil service status, and (3) that the court erred in holding that the petitioner had failed to show that the act of the City Manager in removing the appellant from her said office and position was beyond the power of the City Manager.

It will be noted that the trial Judge did not mention in his order the paragraph of the petition and alternative writ as amended, (numbered XI) which charged the City Manager with bad faith, but based his conclusions on the two grounds stated in his order, and appellant has not specifically assigned this omission as error, but there is a general assignment that the court erred in granting the motion to quash the alternative writ, and one of the arguments advanced in the brief is based on this allegation of bad faith which was contained in said Paragraph XI.

A motion to quash an alternative writ of mandamus, like a demurrer to a declaration, admits as true all such matters of fact as are sufficiently pleaded (State v. Jacksonville Terminal Co., 71 Fla. 295, 71 So. 474), but does not admit allegations of conclusions of law or of fact which are not sustained by the facts alleged. State ex rel. Thompson v. Davis, et al., 124 Fla. 592, 169 So. 199.

Appellant contends that she was a municipal officer, in that she held the "office" of Superintendent of Nurses, inter-

changeably called Supervisor of Nurses, of the City's "Jackson Memorial Hospital"; that this is shown by the character of her duties as set forth in the petition and alternative writ, and also by the letter of the City Manager set out therein which refers to the "office of Superintendent of Nurses," and by the City Manager's Budget Estimate, upon which the City Commission based its appropriation, which recommended that appellant, as "Supervisor of Nurses," be paid $175.00 per month.

This 1942 budget estimate, or a copy thereof, is attached to the petition as Exhibit "A," and at the top of the long column, listing the various positions in the hospital and the salaries recommended, where the words "Supervisor of Nurses" appears, are these words: "Name, Position, Jackson Memorial Hospital." No names are given, but the list also include the superintendent, assistant superintendent, pathologist, dietitian, resident physicians, nurses, stenographers, laundry foreman, bookkeepers, housekeeper, and a host of other "positions," and opposite each is the annual and monthly salary recommended. The word "office" is not used.

Do the facts alleged in the alternative writ show that Miss Glendinning was, prior to her removal, an *officer* of the City of Miami?

In State affairs, this Court has long held that the word "officer" implies a delegation of a portion of the sovereign power of the State to, and the possession of it by, the person filling the office. While *all* the following elements need not always exist, the word office usually embraces the idea of tenure, duration, emolument, and duties and responsibilities imposed by law—a public trust to be exercised, usually with some considerable degree of discretion and judgment, in behalf of the government. See State v. Hocker, 39 Fla. 477, 22 So. 721. An *employment* does not authorize the exercise in one's own right of any sovereign power, or any prescribed independent authority of a governmental nature. State v. Sheats, 78 Fla. 583, 83 So. 508; Dade County v. State, 95 Fla 465, 116 So. 72. Thus, we have held that "official court reporters" are not "officers." Advisory Opinion to Governor, 120 Fla. 729, 163 So. 76. Somewhat the same principles

apply in municipal affairs. We have recently held that a parking meter collector and repairman in the Department of Public Safety of the City of Miami was not an officer, but an employee. See the well considered opinion of Justice SEBRING in Dreskell v. City of Miami, et al., decided by this Court on June 1, 1943, and not yet reported. But we have held that the City Clerk of Miami is an officer, whose office is created and duties imposed by the Charter Act. State v. Bloodworth, 134 Fla. 369, 184 So. 1. In the revised second edition of McQuillin on Municipal Corporations, Vol. 2, page 55, Section 436, the author says that an office "implies an authority to exercise some portion of the sovereign power of the state, great or small, or some portion of the powers of a municipal corporation, either in making, interpreting, administering or executing laws." And again at page 59, Section 437, it is said: "The officer is distinguished from the employee in the greater importance, dignity and independence of his position; in being required to take an official oath, and perhaps give an official bond; in the liability to be called to account as a public offender for misfeasance or non-feasance in office, and usually, though not necessarily, in the tenure of his position. The essential characteristics which differentiate a public office from a mere employment are said to be: (1) An authority conferred by law, (2) a fixed tenure of office, and (3) the power to exercise some portion of the sovereign functions of government." As was said by Chief Justice Marshall: "Although an office is an employment, it does not follow that every employment is an office." U. S. v. Maurice, 2 Brock 96, 30 Fed. Cas. 15, 247. See also Dillon on Munic. Corporations, 5th Ed., Vol. 1, Sec. 425, wherein among other things it is said: "The question of who are officers and who are employees will, almost necessarily, be determined in each jurisdiction by decisions made upon the facts of each particular case, and in which the controlling factors will be the origin of the position (i.e., whether created or provided for by consitutional provision, or by statute, or merely by ordinance under a general statutory authority to appoint the necessary officers and employees), the duties attached to the position, and, to a minor degree, its relation

to the general scheme of the municipal government, as, for example, its subordination to the incumbent of another office or position." This subject is also very well treated in 22 R.C.L. 380; 37 Am. Jur., 854-858, and 43 C.J. 595-6.

In the light of the authorities as applied to the facts alleged, our conclusion is that the position of superintendent or supervisor of nurses which appellant held prior to the merger order of the City Manager, though the work it involved was important, did not constitute an office. So she was an employee, not an officer of the City.

The position of Superintendent (or Supervisor) of Nurses of the Jackson Memorial Hospital is not mentioned in the City Charter. Section 23 gives the Director of Public Welfare managerial and supervisory authority over all hospitals and charitable and correctional institutions of the City; but Section 23 (a) deals particularly with the Jackson Memorial Hospital, which is placed under the management of a Board of Trustees, composed of nine members, who are appointed for certain specified terms by the City Commission upon recommendation of the City Manager, and provides that: "The Board shall have power to establish by-laws, rules and regulations for its government and, subject to the direct administration of the City Manager, shall operate, manage and control the hospital," etc. Whether the Board has attempted, by any by-law, rule or regulation, to make the position formerly held by appellant an office, as distinguished from an employment, the allegations of the petition and of the alternative writ fail to show. Nor does it appear that the Board of Trustees has taken any official action making the holder of such position a member of the "general staff," by rule, regulation, or by-law, or otherwise.

The case cited by appellant in this connection, Bryan v. Landis, 106 Fla. 19, 142 So. 650, is not applicable on this point, for in that case we were dealing with the removal of the Chief of Police of the City of Miami, whom we held to be an *officer* who could only be removed from office by complying with Section 26 of the City Charter. We also held in that case that at common law, an officer (at least one

holding for a specified term or during good behavior) could only be removed for cause, and that in the absence of a constitutional or statutory provision to the contrary, the common-law rule on this subject prevails in this State.

The next question presented is whether or not the appellant occupied a civil service status. The court below held that the allegations of the alternative writ were not sufficient to show that she did occupy such status. The writ alleges that appellant was, under Section 62 of the Charter, within the classified service of the civil service of the City, and hence protected, under Section 65 of the charter, from removal without being furnished with a written statement of the reasons therefor and allowed a reasonable time to answer such reasons in writing.

Section 62 of the City Charter (Chapter 10847, Acts of 1925) reads:

"The Civil Service of the City is hereby divided into the unclassified and the classified service.

"1. The unclassified service shall include:

"(a) The City Manager and his Secretary.

"(b) The heads of departments, members of appointive boards, Judges of the City Court, the City Clerk, Chief of Police and Chief of the Fire Department.

"2. The classified services shall comprise all positions not specifically included by this Charter in the unclassified service. There shall be in the classified service three (3) classes to be known as the competitive class, non-competitive class, and labor class.

"(a) The competetive class shall include all positions and employment for which it is practicable to determine the merit and fitness of applicants by competitive examinations.

"(b) The non-competitive class shall consist of all positions requiring peculiar and exceptional qualifications of a scientific, managerial, professional, or educational character, as may be determined by the rules of the Board.

"(c) The labor class shall include ordinary unskilled labor."

By section 16 of the charter, the following administrative departments are established: (1) Law, (2) Public Service, (3) Public Welfare, (4) Public Safety, and (5) Finance.

Appellant does not allege that she has taken any examination of any kind, or that her name was on any list of eligibles, but her contention is that, being a registered and graduate nurse, and possessing some or all of the "peculiar and exceptional qualifications" referred to, the position she held at the time of the City Manager's merger order fell within subsection 2 (b) of the above section of the charter, as to which class no examinations are required by the language of such subsection. But the concluding words of said subsection 2 (b) are "as may be determined by the rules of the Board."

There is no allegation in the alternative writ showing whether the Civil Service Board had, or had not, made any rule or rules determining whether her former position fell within the "non-competitive class" referred to in said subsection 2. (b), or requiring some sort of examination even though non-competitive in character, for persons applying for or filling such positions.

Section 63 of the City Charter is as follows:

"The Board, subject to the approval of the Commission, shall adopt, amend and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character and industry, which shall have the force and effect of law; shall make investigations concerning the enforcement and effect of this article and of the rules adopted. It shall make an annual report to the Commission.

"(a)   The Chief Examiner shall provide examinations in accordance with regulations of the Board and maintain lists of eligibles of each class of the services of those meeting the requirements of said regulations.

"Positions in the classified service shall be filled by him from such eligible lists upon requisition from and after consultation with the City Manager. As positions are filled the employment officer shall certify the fact, by proper and prescribed form, to the Director of Finance and the Director of the Department in which the vacancy exists."

As the law presumes that public officers do their duty, we must presume that the Civil Service Board has adopted rules with reference to "appointment and employment in all positions in the classified service, based on merit, efficiency, character and industry," and that the Chief Examiner has provided "examinations in accordance with regulations of the Board," whether competitive or non-competitive, or perhaps none at all as to positions falling within subsection 2 (b) and has maintained "lists of eligibles of each class of the services of those meeting the requirements of said regulations."

In view of these charter provisions we do not think it is clearly made to appear by the allegations of facts in the alternative writ that appellant was within the classified Civil Service. Mandamus is a harsh remedy, and the allegations must be sufficiently explicit to show clearly the petitioner's right to the relief sought. As the alternative writ does not allege that the petitioner below had ever taken any examination of any kind under Section 63, or that her name had been placed on any "list of eligibles," petitioner could only be held to have shown that she was within the classified civil service by considering exclusively the language of subsection 2 of section 62 to the effect that "The classified services shall comprise all positions not specifically included by this charter in the unclassified service," and by ignoring the last clause of subsection 2(b), "as may be determined by the rules of the Board," none of which rules are set forth or referred to in the alternative writ. Thus the question of appellant's civil service status, on the facts alleged, is left in such doubt that we would not be justified in holding the court below in error on this point. For aught that appears in the allegations of fact, as distinguished from conclusions, the Board may have made some rule which would have required persons applying for positions failing within subsection 2 (b) to take some kind of examination, or furnish some written statement of facts, which would show the possession of the qualifications which are required of persons coming within, or claiming to come within, the non-competitive class therein referred to.

The civil service provisions of the Miami charter are

quite different, in respect to membership in the civil service, from those of the Pensacola charter construed in Roark v. State, 107 Fla. 659, 145 So. 867.

True it is that section 66 provides that: "All persons in the employ of the City holding positions in the classified service, as established by this charter, at the time it takes effect, shall, unless their position be abolished, retain until discharged, reduced, promoted, or transferred, in accordance herewith." But this charter went into effect in 1925, and the only amendment since then as to the civil service provisions appears to have been an amendment to section 60 adopted in 1939 (ch. 19,981 Acts of 1939) which is not material here. So the charter went into effect several years before appellant became an employee of the City.

We come now to the question of whether or not the City Manager had authority to merge the duties and position of superintendent of nurses with those of the assistant superintendent of the hospital.

This action, if taken in the exercise of authority vested in the City Manager, had the effect of abolishing the position then being held by appellant. The result of this action to appellant was practically the same as if she had been removed or discharged from the position, but there is a distinction between discharge from a position and the abolishment of a position. Although it is not made clearly to appear by the alternative writ that appellant was either an officer of the City, or a member of the classified civil service, she was certainly an employee of the City, and a high grade employee at that. So the existence vel non of the City Manager's authority to take the action he did take, and his good faith in so acting, becomes highly important.

First, as to the City Manager's authority. Section 15 of the City Charter provides that the City Manager, who is appointed by and holds office at the will of the City Commission, "shall be the administrative head of the municipal government and shall be responsible for the efficient administration of all departments," etc.

Section 19 of the charter gives the City Commission the power to create new departments (Section 18 *ex proprio*

*vigore* having established five) or "discontinued any departments and *subdivisions* thereof." Section 20 authorizes the City Manager to appoint a Director for each department and provides that he the former "may consolidate two departments under one Director in his discretion," and that "subject to the supervision and control of the City Manager in all matters, the Director of each Department shall manage the department."

We might observe here that appellant contends that the action of the City Manager in merging the functions of the *position* of Superintendent of Nurses in the City hospital with those of the Assistant Superintendent amounting to "combining" the functions and duties of a "subdivision" of a department with those of another subdivision of the same department, and that the authority to do this was vested solely in the City Commission by Section 19.

We cannot agree with appellant's construction of the words "subdivision of a department." As we view it, the Jackson Memorial Hospital is, by section 23 of the charter, placed in the Department of Public Welfare, and thus might well be considered as a "subdivision" of that Department, although by Section 23 (a) it is placed under the immediate management of a Board of Trustees, and the Board is given authority "to establish by-laws, rules and regulations for its government," which provision is immediately followed by the words "and subject to the direct administration of the City Manager, shall operate, manage and control the hospital." It does not appear that by any City ordinance, or even by any by-law or rule of the Board of Trustees, the position of Superintendent of Nurses, or even the position of Assistant Superintendent of the hospital, have been made a "subdivision" of a department, within the meaning of those words as used in Section 19. Generally speaking, the word "department" connotes a branch or division of governmental administration. A position, or even an office, within a department, does not itself constitute either a department or a subdivision of a department, even though the holder of the position is given clerical assistance and an office room to work in.

Section 16, paragraph (c), provides that the City Mana-

ger shall "exercise control over all departments and divisions created herein or that may be hereafter created by the Commission." And paragraph (b) of Section 16 gives the City Manager authority "To appoint and remove, except as herein provided, all directors of the departments and all subordinate officers and employees in the departments in both the classified and unclassified service; all appointments to be made upon merit and fitness alone, and in the classified service all appointments and removals to be subject to the civil service provisions of this Charter."

Inasmuch as Section 23 (a), which was added to the charter by an act adopted in 1929 (chapter 14,234) makes the operation, management and control of the hospital Board of Trustees *subject to the direct administration of the City Manager,* our conclusion is that under the provisions of the City charter the City Manager had the authority to make the merger order complained of in the alternative writ.

Section 66 of the charter recognizes that even a position held by a person in the classified service may be "abolished," and section 16 gives the City Manager authority to appoint and *remove* subordinate officers and employees in the departments, unless otherwise provided, though if these positions are held by persons in the classified service they can only be removed or suspended by following the method prescribed in section 65.

Under section 15 the City Manager, who is held responsible for *the efficient administration of all departments,* is made the administrative head of the City government; and, with these purposes in mind, and under the broad authority vested in the City Manager by section 16, we have reached the conclusion, as above stated, that the City Manager had the authority to make the merger order complained of by appellant, which in effect abolished the position she had been holding, the presumption being that this was done in good faith for the purpose of promoting the efficient and economical administration of the Jackson Memorial Hospital, as stated in his letter, or order, to the superintendent. See 2 McQuillin on Municipal Corporations, p. 238, Sec. 514 and p. 459, Sec. 583; 19 R.C.L. 936, Sec. 236; 43 C. J. 679. The

power to remove officers, or employees in the civil service, must be exercised in good faith. See State v. Bloodworth, 134 Fla. 369, where a removal of the City Clerk was held illegal and contrary to public policy; Bryan v. Landis, 106 Fla. 19, 142 So. 650; State v. Markle, 107 Fla. 742, 142 So. 822, a case dealing with the removal of a civil service employee, the Superintendent of Yacht Docks, wherein it was said: "To remove an officer or employee 'with a view of increasing efficiency and economy' and immediately appointing another to succeed him, as was done in this case, is not compliance with either the letter or spirit of the law;" Bloodworth v. Beck, 139 Fla. 72, 190 So. 503; State v. Chancey, 129 Fla. 194, 176 So. 78 and Arnold v. State, 147 Fla. 324, 2 So. (2nd) 874, in both of which last two cases it was held that under the respective city charters therein involved civil service employees could be removed without a hearing for purposes of economy, where it was done in good faith from motives of economy; and see also Nelson v. Lindsey, 151 Fla. 596, 10 So. (2nd) 131, wherein it was held that mandamus was a proper remedy to have rescinded an order of the civil service board which was not legally justifiable.

Paragraph XI of the alternative writ assumes that appellant was either an officer or a member of the civil service, in that it alleges that the City Manager merged the two offices to circumvent the law which required giving to petitioner of notice, cause of discharge and a hearing, which assumption is not sustained by the allegations of the petition and alternative writ, as above shown.

The order appealed from is accordingly

Affirmed.

BUFORD, C. J., THOMAS and SEBRING, JJ., concur.