LEHAN, Judge.
This is an appeal from a final administrative order of the Florida Department of Labor and Employment Security, Division of Labor, Employment and Training (hereinafter the Department). The order provided for a business agent’s license to be granted to Celestine Kelly who was not a United States citizen and who was acting as business agent for the Palm Harbor Fire Fighters Union, International Association of Firefighters. On the basis of Kelly’s lack of United States citizenship the license application was opposed by the Palm Harbor Special Fire Control District (hereinafter the District), the Florida Public Employer Labor Relations Association (hereinafter the Association), the city of Largo and the city of Tallahassee. The District appeals from the order. The Association has filed an amicus curiae brief supporting the position of the District. We affirm.
In granting the license the Department relied upon section 455.10, Florida Statutes (1985), which provides:
455.10 Restriction on requirement of citizenship.—
No person shall be disqualified from practicing an occupation or profession regulated by the state solely because he is not a United States citizen.
The District contends that the Department erred because chapter 447, Florida Statutes (1985), governs labor organizations, and section 447.04(l)(a) should control. That section provides:
447.04 Business agents; licenses, permits.—
(1) No person shall be granted a license or a permit to act as a business agent in the state:
(a) Who is not a citizen of the United States.
As the District, the Department, and Kelly agree, the two statutes are facially inconsistent.
The initial issue concerns which statute should govern. We agree with the District that, as between the two, section 447.-04(l)(a) governs. We conclude that the Department erred in relying upon section 455.10. Our basic reasoning is that two facially conflicting statutes are to be harmonized, if reasonably possible, so as to preserve the effectiveness of each; harmony is achieved here by construing section 447.04(l)(a) as being specifically applicable to the occupation of labor organization business agent and section 455.10 as being applicable to other occupations and professions not covered by a specific statute like section 447.04(l)(a).
The second issue then becomes whether, as Kelly argues as an alternative justification for the Department’s order, the citizenship requirement of section 447.- *1384 04(l)(a) violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. We conclude that the equal protection clause is violated by section 447.04(l)(a). Our basic reasoning is that the citizenship restriction of that section is fatally overinclusive under the United States Supreme Court’s decisions governing the constitutionality of occupational restrictions which exclude aliens. That is, even if, as the District argues, section 447.-04(l)(a) has within its scope business agents for labor organizations which include public employees like the firefighter’s union involved here, and even if to that extent that section would, arguendo, be justified under the so-called “political function exception” to the ordinarily required strict judicial scrutiny to be given under the equal protection clause to such a citizenship restriction, the scope of section 447.04(l)(a) also includes business agents for private employee labor organizations for which there could properly be no such political function exception. We therefore conclude that the Department was correct in not denying the license on the basis of Kelly’s lack of citizenship.
The remainder of this opinion more fully explains our conclusions.

As to the Initial Issue, Sections 447.-04(l)(a) and 455.10, Which are Facially Conflicting, Should be Harmonized by Finding Section 447.04(l)(a) Specifically Applicable to the Facts of this Case.

The Department acknowledged in its order that in 1977 section 447.04(l)(a) controlled. However, the Department concluded and Kelly argues that post 1977 legislative enactments established that section 455.10 should control primarily because section 455.10, enacted in 1979, represents the last legislative word on the subject. On the other hand, the District argues that section 447.04(l)(a) should continue to control on two principal grounds: first, that section 455.10 does not represent the last substantive legislative word and, second, that section 447.04(l)(a) more specifically applies to the facts of this case. As explained below, we disagree with the first of the District’s grounds but agree with the second and hold that section 447.04(l)(a) does control.
In 1977 it was clear that the legislature intended the citizenship requirement of section 447.04(l)(a) to apply to labor organization business agents notwithstanding the general proscription against such a requirement then found in section 455.012(1), the predecessor to section 455.10. (As further explained below, section 455.012, enacted in 1972, contained a prohibition against a citizenship requirement which was similar to the prohibition now contained in 455.10). That legislative intent was clear because in 1977, pursuant to chapter 77-184, Laws of Florida, the legislature made a substantive change to section 447.04 by omitting a five-year residency requirement for labor organization business agents which had been in the predecessor statute (section 447.04, enacted in 1943), leaving in 447.04 only a citizenship requirement. We presume that at the time of that 1977 change, the legislature was aware of the general proscription against citizenship requirements found in the predecessor to section 455.10. Section 447.04, as changed and reenacted in 1977, then controlled as to the citizenship requirement for labor organization business agents because of two principles of statutory construction: first, that the last expression of legislative intent controls, see Cable-Vision, Inc. v. Freeman, 324 So.2d 149 (Fla. 3d DCA 1975), appeal dismissed, 336 So.2d 1180 (Fla.1976), appeal dismissed, 429 U.S. 1032, 97 S.Ct. 723, 50 L.Ed.2d 743 (1977); and, second, that, as between two statutes applying to the same subject matter, the more specific statute controls. Parker v. Baker, 499 So.2d 843 (Fla. 2d DCA 1986). Our consideration of these two principles in light of post 1977 changes to the two statutes does not alter the conclusion that section 447.04(l)(a) controls.
In 1983, section 447.04 was given its present wording by being amended slightly in a manner immaterial to the case at hand and being reenacted in virtually the same language as that which had existed in 1977. *1385 In 1979 section 455.10 was given its present wording which is quoted above. Prior to 1979, as we have said, section 455.10 had been numbered section 455.012. Section 455.012 provided:
455.012 Restrictions on requirement of citizenship.—
(1) Except as otherwise provided in this section, no person shall be disqualified from practicing an occupation or profession regulated by the state solely because he is not a United States citizen. However, any regulatory agency may require that an applicant submit proof of his intention to become a citizen as a condition of eligibility to sit for any board examination. A notarized declaration of intention to become a citizen in lieu of a formal declaration of intention to become a citizen, shall be sufficient proof of the applicant’s intention to become a citizen.
(2) When declaration of intention to become a citizen is required as a prerequisite for occupational or professional practice, failure to become a citizen within 5 years after the license is granted shall be a ground for revocation of the license.
(3) Any complaints concerning the violation of this section shall be processed in accordance with the provisions of the Administrative Procedure Act, chapter 120.
The District argues that the change to former section 455.012 made by the 1979 enactment of section 455.10 simply represented an omission of surplus words and did not indicate a substantive change. We disagree. In that 1979 enactment the legislature omitted much of the above quoted wording from prior section 455.012(1) which had created at least potential doubt as to whether persons described .in that section could not be disqualified because they were not citizens. Those omitted words had said, among other things, that the Department could nonetheless “require that an applicant submit proof of his intention to become a citizen as a condition of eligibility to sit for any board examination.” The statute had further provided that “[w]hen declaration of intention to become a citizen is required as a prerequisite for occupational or professional practice, failure to become a citizen within 5 years after the license is granted shall be a ground for revocation of the license.” We conclude that section 455.012(1) was therefore internally inconsistent or at best ambiguous and unclear. The elimination of that inconsistency or ambiguity and lack of clarity by the enactment of section 455.10 in 1979 amounted to a declaration of legislative intent which had been missing from the predecessor statute. We agree with the Department that the 1979 enactment of section 455.10 was the last substantive expression of legislative intent on the subject covered by that statute.
If the task were simply to choose between two facially conflicting statutes, section 455.10 would be chosen on the basis of its being, as we have explained, the last statute to have been substantively enacted. This choice would represent application of the doctrine of amendment by implication under which section 455.10 would be construed as having amended section 447.-04(l)(a). See Johnson v. State, 157 Fla. 685, 27 So.2d 276, 282 (1946); Overstreet v. Ty-Tan, Inc., 48 So.2d 158, 160 (Fla.1950). However, a cardinal rule of statutory construction is that the judiciary will not choose between two facially conflicting statutes and find that one has repealed the other by implication if the two statutes can be reasonably harmonized. See Parker v. Baker; Floyd v. Bentley, 496 So.2d 862 (Fla. 2d DCA 1986).
Here, as in Parker, the two statutes under consideration are facially conflicting. But, as the District argues and as was also the case in Parker, one of them (here section 447.04(l)(a)) specifically addresses the precise factual setting under consideration (447.04(l)(a) specifically provides for licensing of labor organization business agents). On the other hand, section 455.10 applies generally to licenses for occupations or professions. The more specific statute controls. As we said in Parker,
This represents an application of the principle that in these types of circum *1386 stances in which each of two different legislative enactments generally apply but only one specifically applies, the specific governs over the general.
Where there is in the same statute a specific provision, and also a general one which in its most comprehensive sense would include matters embraced in the former, the particular provision must control, and the general provision must be taken to affect only such cases within its general language as are not within the provisions of the particular provision; additional words of qualification needed to harmonize a general and a prior special provision in the same statute should be added to the general provision, rather than to the special one....
Similarly, with respect to a conflict arising between a statute dealing generally with a subject, and another dealing specifically with a certain phase of it, the specific legislation controls in a proper case.
73 Am.Jur.2d, Statutes § 257. See Bryan v. Landis, [106 Fla. 19] 142 So. 650, 653 (Fla.1932).
It is a well settled rule of statutory construction ... that a special statute covering a particular subject matter is controlling over a general statutory provision covering the same and other subjects in general terms. In this situation “ ‘the statute relating to the particular part of the general subject will operate as an exception to or qualification of the general terms of the more comprehensive statute to the extent only of the repugnancy, if any.’ ”
Adams v. Culver, 111 So.2d 665, 667 (Fla.1959), quoting from Stewart v. Deland-Lake Helen Special Road & Bridge Dist., 71 So. 42, 47 (1916), which quotes from State ex rel. Loftin v. McMillan, 55 Fla. 246, 45 So. 882 (1908). These same principles were recently applied by this court in Floyd v. Bentley, 496 So.2d 862 (Fla. 2d DCA 1986).
499 So.2d at 845. See also State ex rel. Johnson v. Vizzini, 227 So.2d 205 (Fla.1969).
That section 455.10 was the last substantively enacted statute is not controlling under circumstances like this. As pointed out in Parker,
[I]n these circumstances the order of enactment of the two makes no difference. “[A] more specific statute will be given precedence over a more general one, regardless of their temporal sequence.” Busic v. United States, 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381, [389] (1980). See Preiser v. Rodriguez, 411 U.S. 475, 489-90, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439, [450] (1973). “Only if the two statutory provisions present such an inconsistency as cannot be harmonized or reconciled will the latest expression of legislative will prevail.” Floyd.
499 So.2d at 845.
We have explained the fundamental basis for our holding concerning the initial issue. The remainder of this opinion concerning that issue addresses the following other arguments and counterarguments made by the parties and dealt with in the Department’s order:
(a) Our holding that section 447.04(l)(a) controls could be considered to be supported also by reasoning that the legislature intended for section 455.10 to apply only to professions and occupations regulated by the Department of Professional Regulation under the provisions of chapter 455, none of which, the District argues, have had business agents subject to licensing like those under section 447.04. In opposition to this reasoning is the rebuttal that in a 1974 enactment of section 455.012 the legislature had omitted language which had been contained in the previous version of that section which had specifically stated that the application of chapter 455 was restricted to administrative boards defined in section 455.01 which did not include any board which regulated labor organization business agents. This rebuttal is an additional argument for the position of Kelly *1387 that section 455.10 was meant to apply to labor organization business agents. However, that argument only further illustrates the conflict between the two statutes. It does not detract from our foregoing basis for harmonizing the two statutes which must be the controlling rationale.
(b) An argument is made by Kelly that a general statute such as section 455.10, which comprehensively revisits the subject matter of a specific statute, such as section 447.04(l)(a), impliedly repeals the latter. But we do not conclude that the principle underlying that argument controls here. In its 1979 enactment of section 455.10 the legislature did not revisit the subject specifically covered by section 447.04(l)(a) nor did it include words like, “notwithstanding any other laws to the contrary.” Thus, we do not conclude that the 1979 enactment of section 455.10 was intended to be a fully comprehensive revision impliedly repealing any facially conflicting provisions of other statutes. Accordingly, Oldham v. Rooks, 361 So.2d 140 (Fla.1978), and Anglin v. Mayor, 88 So.2d 918 (Fla.1956), cited by Kelly do not control.
(c) We do not agree with Kelly’s argument that the fact that there were actually two legislative changes in 1977 to section 447.-04(l)(a) (the last of which is referred to above and continues in that section in its present form) indicates a “vacillation” by the legislature so as to create uncertainty as to whether that section should control. The legislative intent of that last enactment in 1977 was clearly to restrict labor organization business agent licenses to those who are citizens of the United States.
(d) We do not agree with Kelly’s further argument that the legislature’s specific provision in another statute, section 943.-13(2),' saying that police officers must be United States citizens “notwithstanding any laws of the state to the contrary” evidences a legislative intent that section 455.10 should apply to all occupations in the state unless the legislature has enacted contrary legislation worded like section 943.13(2). That there is a stronger basis to except police officers from the provisions of section 455.10 does not affect our foregoing reasoning in harmonizing sections 447.04(l)(a) and 455.10.
(e)Another argument which Kelly makes, citing Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815 (Fla.1983), and which we do not find controlling is that an administrative agency’s construction of a statute which the agency administers is entitled to great deference and should not be overturned unless clearly erroneous. We cannot conclude that an administrative agency, a part of the executive branch of government, can disregard an established judicial rule of statutory construction. Nor was that permitted in Southeast Volusia Hospital District. The judicial review of administrative agency decisions which is specifically provided for in section 120.68(1), as well as that inherent in the judiciary, would become less than fully meaningful if a court were to be bound to defer to the Department on a question of law like that involved here. We find similarly unpersuasive Kelly’s argument that we should give great weight to the fact that the Department has used in the past the statutory construction used here.
The courts, by their efforts to harmonize inconsistent legislative enactments, recognize the importance of the separation of powers doctrine, one of the bulwarks of our country’s democratic system of government. The underlying concern is that if any one branch of our government — executive, legislative, or judicial — encroaches on the powers of another branch, the system of checks and balances built into our government may suffer. Accordingly, when the legislature creates a situation like that in this case involving two facially conflicting statutes, the courts, unless absolutely necessary, do not consider it their function to in effect insert themselves into the legislative process and judicially declare one of those statutes to be repealed. To avoid that, the courts will, if reasonably possible, find a basis to harmonize the statutes and trust that the legislature — being thereby on notice of the situation — will, if *1388 it intends otherwise, take action at the next legislative session. It is no less important that the executive branch, through its administrative agencies, recognize the separateness of legislative powers.

As to the Second Issue, the Provision of Section W.0b(l)(a) Which Imposes a Citizenship Restriction on Labor Organization Business Agents Violates the Equal Protection Clause.

Kelly argues that if section 447.04(l)(a) controls, as we have held it does, then the citizenship requirement of that section must be declared invalid because it violates the equal protection clause. We agree.
Section 447.04(l)(a) provides that labor organization business agents must be United States citizens. But the United States Supreme Court has at least implied that “there would be very few — if any — areas in which a State could legitimately distinguish between its citizens and lawfully resident aliens.” Cabell v. Chavez-Salido, 454 U.S. 432, 438, 102 S.Ct. 735, 739, 70 L.Ed.2d 677, 683 (1982). Any such citizenship requirement must be judicially examined with strict scrutiny.
As a general matter, a State law that discriminates on the basis of alienage can be sustained only if it can withstand strict judicial scrutiny. In order to withstand strict scrutiny, the law must advance a compelling State interest by the least restrictive means available.
Bernal v. Fainter, 467 U.S. 216, 219, 104 S.Ct. 2312, 2316, 81 L.Ed.2d 175, 179 (1984). “Only rarely are statutes sustained in the face of strict scrutiny.... [S]trict scrutiny review is ‘strict’ in theory but usually ‘fatal’ in fact.” Id., at n. 6.
There is a so-called “political function exception” to the strict scrutiny approach. Determining whether the political function exception exists involves application of a two-pronged test announced in Cabell. Under that test a court must, under the first prong, examine the specificity of the citizenship job classification to assure that it is neither overinclusive (by including jobs as to which there is no justification under the second prong for such a classification) or underinclusive (by excluding jobs for which there is such a justification) and, under the second prong, assure that the classification is applied to
“persons holding state elective or important nonelective executive, legislative, and judicial positions,” those officers who “participate directly in the formulation, execution or review of broad public policy” and hence “perform functions that go to the heart of representative government.”
Cabell, at 440, 102 S.Ct. at 740, 70 L.Ed. at 684, quoting from Sugarman v. Dougall, 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853, 862 (1973).
The District argues that section 447.-04(l)(a) fulfills the two-pronged test and is therefore an exception to the strict scrutiny approach. The basic premise of the District’s argument is that that section applies only to public employee labor organizations. Under this premise the District's argument is to the effect that both prongs are satisfied because a business agent licensed under section 447.04(l)(a) is the contact through which public employees, in this case fire fighters, and their governmental employer meet and determine matters of particular public concern, to wit, matters involving relationships between government employees and the government. Thus, since government works through its employees, the argument is that such business agents “perform functions that go to the heart of representative government.” In further support of its position the District argues that such business agents stand in the shoes of public fire fighters who themselves perform important public functions. As we have said, these arguments rest upon the premise that section 447.04(l)(a) applies only to public employee labor organizations.
In support of that premise the District cites Hill v. Florida ex rel. Watson, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782 (1944), which declared section 447.04 to be not validly applicable to private employee labor organizations because the National Labor Relations Act preempted a state’s *1389 right to restrict a union’s choice of its collective bargaining agent. However, in State v. Smith, 123 So.2d 700 (Fla.1960), cert. denied, 371 U.S. 947, 83 S.Ct. 499, 9 L.Ed.2d 497 (1963), the Florida Supreme Court held that Hill presented no impediment to the implementation of section 447.-04 because that section only concerns functions of labor organization business agents which do not involve collective bargaining. Thus, Smith implicitly and necessarily held that section 447.04 applies to business agents for private employee labor organizations and is not restricted in scope to business agents acting for public employee labor organizations. That is, under Hill the applicability of section 447.04 to private employee labor organizations was purportedly restricted, but Smith found that the Hill restriction did not affect that section’s actual meaning and that the section continued to be applicable to such labor organizations. In fact, Part I of chapter 447 in which 447.04(l)(a) is contained is entitled “General Provisions,” and there is a separate Part II entitled “Public Employees.”
Accordingly, the District’s foregoing premise is not valid because the application of section 447.04(l)(a) is not restricted to public employee labor organizations. The question then becomes whether that section, which, applies to all labor organizations, is, for that reason, so overinclusive that it fails the first prong of the two-pronged test even if it, arguendo, fulfills the second prong to the extent it includes within its scope public employee labor organizations. Following the law as established by the United States Supreme Court, we conclude that that section is overinclu-sive in that respect and thus is violative of the equal protection clause. The remainder of this opinion explains that conclusion.
The District, by basing its argument on the premise that section 447.04(l)(a) only deals with public employee labor organizations, seems to implicitly concede that otherwise that section could not come within the political function exception. That is, to the extent section 447.04(l)(a) includes within its scope private employee labor organizations, it could not meet the requirements of the second prong of the test because to that extent it would then accomo-date economic interests and could not even arguably fulfill the political function exception. This is in recognition that, as Cabell says, “citizenship is not a relevant ground for the distribution of economic benefits, [but] it is a relevant ground for determining membership in the political community.” 454 U.S. at 438, 102 S.Ct. at 739, 70 L.Ed.2d at 683. Thus, even if public employee labor organizations are included within that section’s scope and even if the section to that extent has the requisite political function to fulfill the second prong, it is overinclusive because it indiscriminately also imposes a citizenship requirement upon occupations — business agents for private labor organizations — as to which there is no justification under the second prong for doing so.
This conclusion that section 447.04(l)(a) is unconstitutionally overinclusive is, we believe, mandated by Supreme Court case law. In Sugarman the Supreme Court found to be overinclusive and to be therefore in violation of the equal protection clause a statutory citizenship restriction which, like that in section 447.04(l)(a), “sweeps indiscriminately” within its scope occupations which may fulfill the second prong as well as those which do not. 413 U.S. at 634, 93 S.Ct. at 2843, 37 L.Ed.2d at 855. Sugarman involved a New York statute which restricted to United States citizens permanent positions in the competitive civil service system in the state of New York. The state’s argument was to the effect that the restriction was within the political function exception because civil servants participate directly in the formulation and execution of governmental policy. The Supreme Court disagreed and found the statute to be overinclusive and therefore violative of the equal protection clause because it was “neither narrowly confined nor precise in its application.” 413 U.S. at 643, 93 S.Ct. at 2848, 37 L.Ed.2d at 860. “[T]he State’s broad prohibition of the employment of aliens applies to many positions with respect to which the State’s prof *1390 fered justification has little, if any, relationship.” 413 U.S. at 642, 93 S.Ct. at 2847, 37 L.Ed.2d at 859. The law applied, for example, not only to high-ranking state officers who actively participated in the formulation and execution of broad public policy, but also to employees such as sanitation workers and typists. On the other hand, for an example of a citizenship job restriction which was found to be sufficiently narrow to fulfill the first prong, see Cabell (peace officers with arrest powers.)
Because, as we have explained, section 447.04(l)(a) does not fulfill the requirements of the political function exception to the strict scrutiny approach, we must now address more specifically whether that section can, in the first instance, withstand strict scrutiny under the requirements set forth in Bernal as quoted above near the beginning of this discussion of the second issue. We conclude that it does not. This conclusion is for the same reason that section 447.04(l)(a) does not fulfill the political function exception: borrowing from that Bernal language, even assuming, arguen-do, that the section “advances a compelling state interest” by including public employee labor organizations within its scope, it does not do so “by the least restrictive means possible” because it also includes within its scope private employee labor organizations.
Accordingly, while we conclude that the basis for the Department’s order is erroneous because, as we have explained, the Department erred in finding that section 455.10 is applicable, we affirm the refusal to require United States citizenship as a prerequisite to the issuance of a labor organization business agent’s license under section 447.04. We hold that the provisions of subsection (l)(a) of that section are unconstitutional.
Affirmed.
GRIMES, A.C.J., and FRANK, J., concur.