TERRELL, Justice
(dissenting).
July 10, 1956, a motor vehicle owned by and registered in the name of respondent, Glen Harrison, a Florida citizen, was involved in an accident in the State of Michigan. At the time of the accident, the motor vehicle was operated by J. C. Lackey. December 27, 1957, suit was brought against respondent and Lackey in the Circuit Court of Ingraham County, Lansing, Michigan. A copy of the complaint was served upon respondent December 30, 1957, as required by § 257.403, Comp.Laws Mich.1948, Pub. Acts 1949, No. 300.
August 10, 1959, a default judgment was entered against respondent and J. C. Lackey in the amount of $5,528.85, copy of which was personally served upon respondent August 15, 1959, in Pensacola, Florida. November 16, 1959, the Motor Vehicle Department of Michigan entered an order suspending the license and driving privileges of respondent in Michigan for failure *729 to satisfy said judgment, copy of which was received by the Financial Responsibility Division of the State Treasurer’s office November 23,1959. November 19, 1959, the Financial Responsibility Division received an abstract of the court record in the said cause certifying the unsatisfied judgment in the amount stated herein.
December 15, 1959, the insurance commissioner, petitioner, issued an order suspending the driver’s license, registration and license plates of the respondent because of failure to satisfy the judgment rendered in the State of Michigan. The said order of suspension inadvertently referred to § 324.081, Florida Statutes, F.S.A., instead of § 324.121, Florida Statutes, F.S.A. August 31, 1960, as authorized by § 324.121, Florida Statutes, F.S.A., petitioner issued a nunc pro tunc order of suspension which was transmitted to respondent by certified mail.
August 10, 1960, or thereabout, respondent filed his complaint in Court of Record, Escambia County, praying for a temporary restraining order enjoining petitioner from enforcing the order suspending his driver’s license, registration and license plates. August 10, 1960, the court granted the temporary restraining order. August 31, 1960, petitioner filed his answer and counterclaim. September 23, 1960, the court entered final decree dissolving the temporary restraining order and directed respondent to surrender his driver’s license, registration and license plates to the insurance commissioner. February 9, 1961, the court of record denied the petition for rehearing.
February 20, 1961, respondent entered his appeal to the District Court of Appeal, First District. Motion to dismiss the appeal was seasonably overruled and on September 21, 1961, the district court of appeal reversed the judgment of the Court of Record of Escambia County. Petition for rehearing was denied and petitioner moved the district court to certify the question presented in the cause to the Supreme Court as being one of great public interest, which motion was denied.
We are confronted with an appeal by certiorari from the order of the district court wherein the order of the Court of Record of Escambia County was reversed.
We first determine whether or not this court has jurisdiction to hear and adjudicate the questions presented in this cause. The petitioner contends that the question of jurisdiction is concluded in the affirmative by that part of Section 4(2), Article V of the Constitution, which provides that the Supreme Court “may review by certiorari any decision of a district court of appeal that affects a class of constitutional or state officers.”
A state officer, said this court, is “a person in the service of the government, whose field for the exercise of his jurisdiction, duties and powers is coextensive with [the territorial] limits of the state * * * and whose authority involves an exercise of some portion of the sovereign power, either in making, executing, or administering the laws.” Glendinning v. Curry, 153 Fla. 398, 14 So.2d 794; Advisory Opinion to the Governor, 146 Fla. 622, 1 So.2d 636. It does not appear that this court has heretofore determined what is comprehended in the phrase “a class of constitutional or state officers.” In this I do not overlook what we said in Hakam v. City of Miami Beach, Fla.1959, 108 So.2d 608; State v. Robinson, Fla.1961, 132 So.2d 156, and Lake v. Lake; Fla.1958, 103 So.2d 639, 642. Nothing said as to law or fact in any of these cases has the slightest influence on the case at bar. It is admitted that the petitioner, state treasurer, is a constitutional officer, but it is contended that he is a single officer and does not constitute a “class” because it requires several of a kind to do so.
I think “a class of constitutional or state officers” lends itself to such analysis as gives it a reasonable field of operation. The word “class” may be said to limit “constitutional” officers, but it does not limit “state officers.” The two phrases are con *730 nected by the disjunctive “or” which in one aspect connotes difference or separation. As used here it places constitutional officers and state officers in two separate categories so that “class” modifies nothing but constitutional officers. Many officers in Florida, besides state officers, are recognized by the Constitution and may be classified as constitutional officers. They include county officers, district officers and others created by statute. Then there is a larger class of state officers including the members of the cabinet, railroad commission, state board of health, citrus commission, presidential electors, members of the legislature and others. Some of these lend themselves to classification but certainly members of the cabinet would not. They are not limited by the word “class” as used in the Constitution and in so many instances, as in this case, they are ex officio under the law, clothed with very important statewide duties. We are never to overlook that their jurisdiction is statewide and that their authority involves some portion of the sovereign power.
When the legislature submitted Article V, Section 4(2), to the people for approval, there was no suggestion as to what was meant by the phrase “a class of constitutional or state officers.” The Florida Bar and many others became interested in and actively took up the battle to adopt this provision and other provisions of Article V. It was approved by one of the largest votes ever given a proposed constitutional amendment. This court has long been committed to the doctrine that when it is called on to construe constitutional or statutory provisions, they should be construed so as to give them a field of operation if this can be reasonably done. We are also committed to the doctrine that if constitutionality of a statute is brought in question and it admits of two interpretations, one of which would render it constitutional and the other unconstitutional, it is our duty to adopt that rendering it constitutional.
I refuse to think that when the legislature submitted to the people and the people approved a constitutional provision which authorized this court to “review by certio-rari any decision of a district court of appeal that affects a class of constitutional or state officers,” when the Bar wholeheartedly worked for the approval of such provision, they gave us a “pig in a poke” that means nothing and is unworkable, yet that is the dead end we run into because a “class” contemplates a number of individuals and the state treasurer is only one. I submit that the foregoing is a reasonable rendering of the meaning of a “class of constitutional or state officers” and gives vitality to the people’s action, the action of the legislature and the action of the Bar.
I am, of course, aware that the legal and English lexicons define a “class” as being composed of several or more people banded together by law or common consent for a common purpose, or words to that effect, but the legislature and the people had no such idea in mind when they provided for appeals that “affects a class of constitutional or state officers.” They knew that the state treasurer and other state officers were authorized to litigate and in fact were frequently engaged in litigating controversies. They knew that these controversies frequently involved questions of momentous importance to all the people of the state and that they would likely reach this court. I must assume that the legislature and the people had knowledge of the foregoing facts and having knowledge of them, it is utterly unreasonable to say that they meant to prohibit a member of the cabinet from coming to this court with a question of the importance to the public as that involved in this case.
The pertinent provisions of Section 4(2), Article V, to this case are (1) that, authorizing appeals to this court from the district courts of appeal on conflict jurisdiction; (2) appeals from final judgments or decrees directly passing upon the validity of a state or federal statute or treaty; (3) or construing a controlling provision of the Florida or federal Constitution; (4) “in all direct appeals and interlocutory reviews by *731 certiorari, the Supreme Court shall have such jurisdiction as may be necessary to complete determination of the cause on review.” I do not attempt to elaborate on these provisions except to say that they, with perhaps others, have the effect of placing this court at the apex of the state judicial system; they endow it with such supervisory power as enables it to maintain consistency in the law and constitute it our chief constitutional arbiter. Rules of procedure that do not enable this to be done fall far short of the mark.
In this connection, I must direct attention to the fact that the state treasurer, as insurance commissioner, is authorized to administer Chapter 324, Florida Statutes, F. S.A., otherwise known as the Financial Responsibility Law of 1955. The state treasurer has interpreted the word “judgment” in this act to mean the judgment of any state or federal court in the United States, while the District Court of Appeal, First District, has limited its application to judgments secured in the State of Florida. The Court of Record of Escambia County [same jurisdiction as circuit court] evidently construed the word “judgment” in harmony with the administrative interpretation. In view of what is said in the preceding paragraph, I think it must be within the jurisdiction of this court to resolve this conflict in jurisdiction.
I express no opinion at this time as to whether the interpretation of the petitioner or the district court of appeal is the correct one. This discussion is limited solely to the question of jurisdiction of this court to decide the questions raised. I think what is said in the forepart of this opinion analyzing the phrase “a class of constitutional or state officers” should conclude the question of jurisdiction in the affirmative. We are importuned by a member of the cabinet, an important “state officer,” the state treasurer, to take jurisdiction and adjudicate the questions raised. He points out that the case presents very important public questions in the administration of Chapter 324 which is potentially applicable to every citizen of Florida who owns an automobile, depending on correct interpretation; that petitioner is now confronted with three interpretations of said act which, in view of this court’s function to keep the law consistent and stable, it should take jurisdiction of and settle. Since the state treasurer exercises a portion of the sovereign power and his jurisdiction runs throughout the state, I think that when he knocks on the door of this court, he is entitled to be let in aed have his grievance adjudicated. If our jurisdiction is cut so thin we cannot adjudicate a case like this, we are too often turning justice down the drain when it should be directed in the proper channel.
I, therefore, dissent.
ROBERTS, C. J., concurs.